**WRIST–ROCKET MANUFACTURING CO., INC., Appellant, Cross-Appellee,**

v.

**SAUNDERS ARCHERY COMPANY, Appellee, Cross-Appellant.**

**Nos. 77–1588, 77–1580.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1978.

Decided June 12, 1978.

Rehearing and Rehearing En Banc Denied July 6, 1978.

William E. Holland, of Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, Omaha, Neb., for appellant.

Esther O. Kegan, of Kegan, Kegan & Berkman, Chicago, Ill., for appellee; Glenn E. Klepac and Jane Shay Lynch, Chicago, Ill., on briefs.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and ROSS, Circuit Judge.

GIBSON, Chief Judge.

This case is before the court for the second time and involves the right to use the trademark "Wrist-Rocket" on wrist-braced slingshots. The facts are adequately set forth in *Wrist-Rocket Manufacturing Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846 (8th Cir.), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975) (hereinafter *Wrist-Rocket I*), and in the published first memorandum opinion of the District Court.[1] *Wrist-Rocket Manufacturing Co., Inc. v. Saunders*, 379 F.Supp. 902 (D.Neb.1974). They will not be restated here. We will again refer to appellant/cross-appellee Wrist-Rocket Manufacturing Co., Inc. as Ellenburg[2] and appellee/cross-appellant Saunders Archery Company as Saunders.

The earlier appeal came at a time when the District Court retained jurisdiction to determine the amount of damages. A panel of this court concluded that it did not have jurisdiction under 28 U.S.C. § 1291 but did have jurisdiction under 28 U.S.C. § 1292(a)(1) "to examine the merits of that part of the order granting to the appellee a permanent injunction and ordering the cancellation of the appellant's registration." 516 F.2d at 849. The panel then proceeded to consider the injunctive claims and to express its views on some other portions of the case.

In *Wrist-Rocket I* this court held, *inter alia*, that Ellenburg's registered trademark was incontestable under 15 U.S.C. § 1065, that none of the defenses or defects listed in 15 U.S.C. § 1115(b) applied, but that Saunders was the common-law owner of the trademark. The panel concluded that in this situation Ellenburg's use of the trademark could not be challenged and Saunders had a non-exclusive right to use the mark in "market areas where he had established prior use before the publication of Ellenburg's registration," on May 4, 1965. The

1. The Honorable Albert G. Schatz, United States District Judge, District of Nebraska.

2. Howard J. Ellenburg developed and manufactured the slingshots involved in this case. His proprietorship was succeeded by Tru-Mark Manufacturing Company, which was succeeded by appellant Wrist-Rocket Manufacturing Company, Inc. Pursuant to the first District Court decision, the corporate name was changed to Trumark Manufacturing Company. In its briefs and at oral argument, appellant stated that its present name is Trumark Manufacturing Company.

case was remanded for a determination of those areas and other matters, including approval of prefixes of origin to be used by Saunders and Ellenburg in conjunction with the mark. Among its conclusions on remand, the District Court decided that Saunders' common-law rights extend to all fifty states, that Saunders has not proved any recoverable damages for Ellenburg's allegedly false statements in securing trademark registration, and that Saunders is liable to Ellenburg in the amount of $18,-592.52 for breach of fiduciary duty in failing to give reasonable notice of termination of its distributorship. Each party appeals. We affirm in part and reverse in part.

In large measure, trademark rights are determined by the common law and the statutes of the states. A major exception is the incontestability feature found in the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b).[3] With exceptions, 15 U.S.C. § 1065 provides that if certain conditions are present, continuous use of a registered mark for five consecutive years results in the registrant having an *incontestable* right to use the mark in commerce in connection with the goods or services with which it had been used. 15 U.S.C. § 1115(b) provides that a registration which is incontestable under § 1065 is conclusive evidence of the registrant's *exclusive* right to use the mark

except when one of seven enumerated defenses or defects is established.

■ It has been held that if two parties acquire common-law rights in a trademark in different areas and the prior user registers the mark, then the registered owner's rights can become incontestable but the other common-law owner retains exclusive rights to the mark in areas where his rights antedated registration. *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 157 (6th Cir. 1973); *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904 (7th Cir. 1968). Those cases rely heavily on 15 U.S.C. § 1115(b)(5), which states an exception to the rule of incontestability as conclusive evidence of right to exclusive use.

■ Turning to the instant case, we note that *Wrist-Rocket I* held that none of the defenses or defects of § 1115(b) applied. Saunders asserts that this was error and that exception (5) is present and thus *Old Dutch Foods* and *Burger King* govern the case. The prior panel's holding in this case is the "law of the case." It does not limit our power to correct error if it occurred. *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). However, this court follows the policy that matters decided on an earlier appeal will not be

**3.** 15 U.S.C. § 1065 provides in part:

Except on a ground for which application to cancel may be filed at any time under subsections (c) and (e) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: *Provided,* That * * [provisions not applicable to this case].
15 U.S.C. § 1115(b) provides in part:
(b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to

use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or

\*     \*     \*     \*     \*     \*

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved[.]

\*     \*     \*     \*     \*     \*

disturbed unless clearly erroneous and manifestly unjust. *Otten v. Stonewall Insurance Co.,* 538 F.2d 210, 212 (8th Cir. 1976); *Metzger v. Hossack,* 165 F.2d 1, 2 (8th Cir. 1948); *Kempe v. United States,* 160 F.2d 406, 408 (8th Cir. 1947). Applying that standard here, we reaffirm *Wrist-Rocket I* except limited portions which are subject to interpretations at variance with this opinion.

■ 15 U.S.C. § 1065 excludes certain situations from the operation of incontestability. Specifically, it excepts "the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication * * *." The plain meaning of this language is that if a party has acquired common-law trademark rights continuing since before the publication of the federal registration, then to that extent the registration will not be incontestable. 4 Callman, Unfair Competition, Trademarks and Monopolies § 97.3(c)(3) (3rd ed. 1970). Applying that section to the present case, it prevents Ellenburg's registration from being incontestable *vis-a-vis* Saunders in those areas where Saunders had acquired common-law rights before the publication date, May 4, 1965.[4]

■ Under similar circumstances, the courts have held that a common-law owner whose use antedated the registration but post-dated the registrant's use in other areas has exclusive rights in the area preempted by the common-law owner. *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 157 (6th Cir. 1973); *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904, 909 (7th Cir. 1968). *See also* 4 Callman, Unfair Competition, Trademarks and Monopolies § 97.3(c)(4)(c) (3rd ed. 1970). Those cases involved the application of 15 U.S.C. § 1115(b)(5). We can conceive of no reason to reach a different result in this case, where the common-law owner's use antedated the registrant's use. Therefore, geographically defined areas of exclusive use are required for each party in this situation to effectuate the will of Congress and meet the needs of business and the public.[5]

In *Wrist-Rocket I* this court remanded the case to the District Court to determine the market areas where Saunders had acquired common-law rights before the publication of Ellenburg's registration.[6] Saunders now challenges the District Court's determination of those market areas as including all fifty states.[7] After a careful review of the record, we are convinced that the District Court's determination of this issue is erroneous.

---

4. Since we conclude that in this situation between these parties the registration is not incontestable, we have no occasion to decide whether incontestability is an offensive weapon. The Seventh Circuit carefully considered that question and *Wrist-Rocket I* in *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 374 (7th Cir. 1976). *See* Riley, *Trademark Law,* 1977 N.Y.U. Annual Survey of Am. Law 595.

For the same reason we have no reason to reconsider the applicability of 15 U.S.C. § 1115(b)(5). Professor McCarthy suggests that the plain meaning of § 1115(b)(5) excepts only the unregistered use of a mark "adopted without knowledge of *the registrant's prior use* * * *" (our emphasis). In the present case Saunders, the unregistered owner, used the mark before Ellenburg, the registrant. Since the registrant was not the prior user, § 1115(b)(5) does not apply. 2 J. McCarthy, Trademarks and Unfair Competition § 26:19 (1973). On the other hand, Saunders certainly lacked knowledge of Ellenburg's prior use since

there was none. *But see* Annual Review Committee, *The Twenty-Ninth Year of Administration of the Lanham Trademark Act of 1946,* 66 Trademark Reporter 337, 397–98 (1976).

5. The language of *Wrist-Rocket I* is unclear on this point. The court indicated that the parties would have "concurrent use" of the mark and the District Court, on remand, granted both parties use in all fifty states. However, construing *Wrist-Rocket I* in light of the law in other circuits, we find that although both parties will be using the mark, each will have geographically defined areas of exclusive use.

6. Contrary to Saunders' contention, publication is the important date under § 1065. *Wrist-Rocket I* was correct in so holding.

7. The District Court held, and we agree, that Saunders had no common-law trademark rights in the District of Columbia. A local ordinance prohibits wrist-braced slingshots in that area.

■ Ellenburg contends that geographical market areas smaller than whole states should have been considered. He cites *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99 (7th Cir. 1970); *Burger King v. Hoots*, 403 F.2d 904 (7th Cir. 1968); and *Jerrico, Inc. v. Jerry's, Inc.*, 376 F.Supp. 1079 (S.D.Fla.1974). Each case involved the rights of a common-law owner of a trademark used as the name of retail establishments which had geographically small areas of market power. By contrast, Wrist-Rocket slingshots were sold by Saunders and Ellenburg in interstate commerce to jobbers and retail chains which placed them on countless store shelves across the country. Because of the nature of the product and the channels of distribution utilized, it was proper for the District Court to use whole states as market areas.

■ We agree with Ellenburg's contention that common-law trademark rights cannot be established by advertising alone. However, other evidence was admitted which was relevant to the extent of significant market penetration and Saunders' common-law rights. Despite the fact that the informal nature of the parties' relationship resulted in sales records being incomplete, Saunders' invoices established sales in forty-two states between January 1964 and May 4, 1965, the publication date. Many of these and earlier sales were to wholesale distributors, jobbers and retail chains, which in turn supplied retail outlets where the public shopped. Other sales were direct to consumers and were solicited through advertisements in national periodicals.

Despite this evidence and testimony that sales were nationwide and that Saunders had a national sales organization, Ellenburg claims Saunders has common-law rights in only a few states. Ellenburg points to our decision in *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir. 1967) and 436 F.2d 705 (8th Cir. 1971), for the proposition that the dollar volume of sales by Saunders was insufficient to establish common-law rights. *Sweetarts* involved varieties of candy competing in the marketplace under the trademark "SweeTarts." In remanding the case

for a factual determination of "market area," we noted that the trial court should weigh all factors. 380 F.2d at 929. We noted certain factors that were significant in that factual context but we did not suggest that those were controlling in all cases. The second opinion of this court in *Sweetarts* did discuss certain dollar sale volumes as being substantial or insubstantial. Those figures must be limited to the particular product market situation involved. We have found no simple dollar amount or population-to-sales ratio that will apply across the board to products of different types, uses and durability and that appeal to different segments of the population.

In the present case, slingshots are of interest to a small segment of the general market. Wrist-braced slingshots did not enter the market until approximately 1954. They were protected by a patent until March 1971. During that period, the parties to this lawsuit had to create a demand for their product through quality production, advertising and aggressive sales efforts. Those actions, as well as the efforts of post-1971 competitors, have been successful. Sales of wrist-braced slingshots have increased annually. During 1975, Saunders' sales alone amounted to nearly a quarter of a million dollars. However, by 1965 the market had not matured; slingshots were available in most of the country but sales were insignificant in many eastern and southern states. Sales were significant in several western and midwestern states. Our difficult task is to determine the lower limit of significant sales in this market in the years prior to and including early 1965.

As stated above, the evidence on this issue is limited. Sales records are complete only for the period beginning in 1964. We have carefully considered the exhibits reproduced in the appendix and the summary of other exhibits contained in Ellenburg's brief. In light of the very limited but growing demand for wrist-braced slingshots in 1965, the first step is to consider the ratio of population to units sold in the short period for which records are complete.

During that sixteen-month period, eighteen states had fewer than 10,000 persons per Wrist-Rocket unit sold.[8] Five states had greater than 10,000 but fewer than 20,000 persons per unit. Two states had greater than 20,000 but fewer than 30,000 persons per unit. No state fell in the 30,000 to 40,000 range. Three states had 40,000 to 50,000 persons per unit. Four states had 50,000 to 60,000 persons per unit. Eleven states had greater than 60,000 persons per unit and there was no direct evidence of sales during the period in the remaining states.

A natural breaking point occurs in the 20,000 to 30,000 persons per unit range. In our view, the 20,000 figure should be used as the breaking point. Neither of the states falling in the 20,000 to 30,000 range is contiguous with any other state having a lower population-to-sales ratio. This permits the inference that those states were distribution centers to surrounding areas where relatively few shipments were made by Saunders. Thus the number of units sold is not a good index of public recognition of the mark in those states.

As we said, the statistics are only a first step. Of the twenty-three states within our 20,000 persons per unit guideline, Vermont and Maryland require closer analysis because they are almost completely surrounded by states falling outside the 20,000 figure. New England contains three states with no sales during the sixteen-month period under consideration. When the six New England states are considered as a group, the ratio is over 94,000 people per unit. The inference is inescapable that units sold in Vermont were actually distributed in surrounding states. Thus, Vermont

should not be in Saunders' area of exclusive use. Similarly, when the area of Maryland, Virginia, Pennsylvania and Delaware is considered as a whole, it is clear that Maryland should not be in Saunders' exclusive area.

On the other hand, four predominantly rural states that did not meet the 20,000 people per unit test are surrounded in whole or in part by states meeting the test. In each case the test is met when the surrounding group of states is considered as a unit. Therefore Indiana, South Dakota, Idaho and New Mexico should be included in Saunders' area of exclusive use because of the clear implication that sales in surrounding states in fact were distributed in those states, thus giving rise to public recognition of the mark.

The approach we have taken is limited to the particular market situation involved in this case. If additional sales records had been available they would have been considered. However, we hold that in this case Saunders' common-law right to exclusive use is established only in those states extending from Ohio and West Virginia across the northern Midwest and then from the Great Plains to the Pacific.[9] In all other states, Ellenburg's registration protects his exclusive use of the mark.[10]

Obviously, our disposition of the exclusive use and market areas issues puts the claims of each party for infringement damages in a new light. After considering the exhibits regarding Saunders' recent sales and the remarks by Ellenburg's counsel that his sales have steadily increased, we are satisfied that the damages sustained by

8. In some instances, Saunders attached the mark to other sporting equipment, including "slingbows." We treat those uses of the trademark as contributing to the development of common-law rights.

9. Saunders' area includes: Arizona, California, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, West Virginia, Wisconsin and Wyoming.

10. We need not decide whether concurrent registration similar to that ordered by the Sixth Circuit in *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 157 (6th Cir. 1975), is in order under the present facts. The parties have not challenged the disposition of the registration cancellation claim in *Wrist-Rocket I.* If Saunders files an application for concurrent registration, the Patent and Trademark Office can consider this opinion and make any appropriate entries upon the records.

either party have been approximately equalled by those sustained by the other party. Even if the evidence would sustain greater damages for one of the parties, the advantage would be trivial compared to the judicial resources required by another remand. Any net judgment would be far exceeded by the costs to the litigants in proving their claims. Therefore, we affirm the denial to both parties of infringement damages.

■■■ We also affirm as not clearly erroneous the District Court's finding that Saunders had proved no damage other than attorney fees from Ellenburg's false statements in its registration of the trademark. 15 U.S.C. § 1117 now permits an award of attorney fees in exceptional cases. However, that language was added in a 1975 amendment and does not apply to cases pending on January 2, 1975. This case was commenced in 1972 and this claim comes under 15 U.S.C. § 1120. In *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 474 (1967), the Supreme Court denied any claim for attorney fees under § 1117 as it read prior to the 1975 amendment. Since then the Second Circuit has carefully considered the question of recovery of attorney fees under § 1120 and has concluded that attorney fees may not be recovered except possibly "where an absolutely false registration was fraudulently obtained *solely* for the purpose of instituting completely vexatious litigation." *Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 497 F.2d 433, 439 (2d Cir. 1974). We are persuaded by the reasoning of the Second Circuit that, in light of *Fleischmann*, attorney fees are not recoverable as damages in this case.

■■■ In *Wrist-Rocket I*, this court reversed the District Court's injunction enjoining Ellenburg from using the corporate name "Wrist-Rocket Manufacturing Company, Inc." On remand, Saunders contended that permitting use of that name would result in confusion and inequity. The District Court saw *Wrist-Rocket I* as a clear mandate permitting Ellenburg's use of the name. At oral argument, Ellenburg's counsel stated they were not using "Wrist-Rocket" in the corporate name and sought our guidance. In view of our disposition of the case, we believe *Wrist-Rocket I* was in error on this point. The injunction, insofar as it pertained to the corporate name, is hereby ordered reinstated. As a matter of equity to the parties and fairness to the public, neither party should use the trademark words in its corporate or company name. To further fair trade information and to protect the public, we reaffirm the requirement that each party use a prefix of origin with the mark.

In its 1974 memorandum opinion, the District Court concluded that Saunders had breached a fiduciary duty owed to Ellenburg in giving thirty rather than ninety days notice before terminating the contract between the parties. 379 F.Supp. at 916–20. The District Court did this after noting that there was no agency relationship but there was something more than a "pure buy-sell arrangement." It determined that reasonable notice of termination was required. "Little evidence was presented to the Court as to what a reasonable notice of termination would have been under the facts and circumstances of this case." 379 F.Supp. at 920. The District Court held that 90 days, rather than the 30 days actually given, was reasonable.

In *Wrist-Rocket I*, we expressed no views on this issue because the amount of damages had not been determined. The District Court has now set damages at $18,-592.52. Saunders appeals from this judgment, challenging the District Court's jurisdiction in addition to other aspects of the court's ruling.

■■■ Saunders' jurisdictional claim relies on *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). However, the limited definition of pendent jurisdiction in that case was expanded in *United Mine Workers v. Gibbs*, 383 U.S. 715, 722–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Under it, the test is whether the state and federal claims derive from a common nucleus of operative fact and whether, "considered without regard to their federal or

state character, * * * [plaintiff] would ordinarily be expected to try them all in one judicial proceeding * * *." 383 U.S. at 725, 86 S.Ct. at 1138. *See also* 6 Wright and Miller, Federal Practice and Procedure: *Civil* § 1588 (1971). Applying that standard, we are convinced that the District Court had jurisdiction to hear, in its discretion, Ellenburg's claim for failure to give reasonable notice of termination as well as the claims under the Lanham Act.

■ The District Court recognized that there was little evidence before it on the issue of a reasonable termination notice. In our view, the available evidence strongly pointed to the reasonableness of the thirty-day notice. This is so even when we assume that the District Court was correct in holding that under Nebraska law this oral contract or method of dealing resulted in a fiduciary duty to give reasonable notice before termination.

From 1954 to 1959, the parties operated under a written contract which was by its terms extended for five years by neither party giving *thirty days* notice in 1959. In 1964, Ellenburg's attorney prepared a proposed contract providing for a *thirty-day* notice of cancellation. On September 25, 1964, Ellenburg wrote a letter to Saunders, notifying him that the written contract had expired and offering to continue to operate under the same terms with either party having a right to cancel on *thirty days* written notice. Finally, we note that Ellenburg entered into a new distributorship agreement within the *thirty-day* notice period. In light of this evidence, we are left with a definite and firm conviction that Saunders was entitled to view thirty days as a sufficient notice period. The District Court's finding that ninety days was the reasonable period was clearly erroneous. The judgment for $18,592.52 in favor of Ellenburg is reversed.

■ In this opinion, we have revised views expressed in an opinion of this court which was filed in 1975. We have done so reluctantly after becoming convinced that the earlier opinion was subject to interpretations not in harmony with decisional law

in other circuits. Each party contended that some parts of the first opinion were final while others were not. Neither party was content with *Wrist-Rocket I* and both will probably be dissatisfied with this opinion. We have determined that Saunders has the right to exclusive use of the mark in those areas where he holds a superior common-law trademark; Ellenburg has an exclusive right of use in all other areas covered by the federal registration. Neither party is entitled to damages under any of the theories presented. Each party shall bear his own costs on this appeal.

Affirmed in part and reversed in part.