TRANSPORT COMPANY, INC., Frank Thompson
Transport, Inc., and Miller Transporters, Inc. *v.*
CHAMPION TRANSPORT, INC.

88-285                                              766 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered March 6, 1989

180

*Harper, Young, Smith & Maurras*, and *Kemp, Duckett & Hopkins*, for appellant.

*Douglas, Hewett & Shock*, for appellee.

JOHN I. PURTLE, Justice. This case involves an appeal from a decision of the Pulaski County Circuit Court affirming an order of the Arkansas Transportation Safety Agency, Transportation Regulatory Board. The Board's order granted the appellee a permit to operate as a contract carrier for Fina Oil and Chemical Company in intrastate commerce. The appellants argue that the Board and the circuit court erred in holding that the appellee, as an applicant for a contract carrier's permit, had a lesser burden of proof than an applicant for a common carrier's certificate. We hold that the Board and the circuit court did not err in their rulings.

Appellee Champion Transport, Inc., applied to the Arkansas Transportation Safety Agency, Transportation Regulatory Board, for a permit to operate as a contract carrier to transport crude oil, condensate, and casing-head gas over irregular routes between points in Miller County and the rest of the state, south of Interstate 40. The appellee would be under exclusive contract to Fina Oil and Chemical Company. Appellants Transport Company, Inc., Frank Thompson Transport, Inc., and Miller Transporters, Inc., all intervened and protested the granting of a permit to the appellee. The Board granted the application, and the appellants appealed the matter to the Pulaski County Circuit Court, which affirmed the Board's decision by order entered September 2, 1988.

At the hearing before the Board, representatives of Fina Oil and Chemical Company testified that the company had an urgent and immediate need for a contract carrier and that the appellee could supply exactly the services required. A witness for Fina stated that in October 1988 the company lost $7,672.50 due to the fact that the appellee was not authorized to transport Fina's

material from the plant to various points throughout the southern part of the state. The oil company also testified that it had tried to use common carriers in the past but had found them to be unsatisfactory primarily because one day service, dedicated equipment, and company-trained drivers were unavailable.

Fina's representatives further testified that, unless the applications were granted, the company would be forced to sell its crude oil to an independent purchaser because it could not afford the prices demanded by the existing carriers. Moreover, Fina stressed that it needed service available on demand, dedicated equipment, and drivers trained according to the standards of the oil company's rules and regulations. The required service includes the use of transports with pumps, centrifuges, hydrometers, gauge lines, and other necessary equipment for hauling crude oil. The company also needs drivers who will maintain the strictest confidentiality with respect to customers and price of product.

Thompson Transport, Inc., furnished testimony that it had only one truck currently available to transport crude oil in Miller County but that it did have other equipment on hand. This carrier indicated it could dedicate two pieces of equipment to Fina but acknowledged it could not haul exclusively for the oil company.

Miller Transporters' testimony was that while it already hauled other products intrastate for Fina every day, it had extra equipment which could be dedicated to Fina. Miller did not have any equipment dedicated exclusively to transporting crude oil.

Representatives of Transport Company, Inc., testified that their company had eleven trailers and thirteen to fifteen drivers available. They testified that these drivers and equipment had been utilized to transport crude in the past but were presently idle because some fields were closed. This carrier asserted that the equipment and service it offered met the requirements of Fina as stated at the hearing on the appellee's application. Transport's posted rate is forty-four and one-half cents per barrel, Thompson's fifty-three and eight-tenths cents per barrel, and Miller's seventy-one cents per barrel. The Board specifically found that Transport Company, Inc., as a common carrier, could not haul exclusively for Fina but could dedicate some equipment and drivers.

The question presented to the court is whether the Board and the circuit court erred in finding that a lesser burden of proof is required for approval of a contract carrier's application for a permit than a common carrier's application. Arkansas Code Annotated § 23-2-425(b)(3) (1987), providing for appellate review, states in part: "[A]ny finding of fact by the circuit court shall not be binding on the Supreme Court, and the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper, and equitable."

In the case of *Batesville Truck Lines* v. *Arkansas Freightways, Inc.*, 286 Ark. 116, 689 S.W.2d 553 (1985), we held that in appeals of decisions of the Arkansas Transportation Commission (now Transportation Regulatory Board), we were not bound by determinations of fact made by the circuit court. There we stated: "In a case such as this, the factual question is whether there is a preponderance of evidence supporting a finding that any one of the criteria for granting a certificate in areas already being served by trucking companies was shown to have been satisfied." More recently, in *Jones Rigging and Heavy Hauling, Inc.* v. *Howard Trucking, Inc.*, 298 Ark. 33, 764 S.W.2d 450 (1989), we stated that "we will not disturb the findings of the commission [Board] unless they are against the preponderance of the evidence."

The Board found that the appellee had met its burden of proof as required by the Arkansas Motor Carrier Act and issued a certificate. In the present case, the Board relied on a decision by the Interstate Commerce Commission, *James A. Sproul, Contract Carrier Application*, 1 M.C.C. 465 (1937), and held that the requirement of Ark. Code Ann. § 23-12-224(a) (1987) that a proposed contract carrier operation "will promote the public interest" imposes a lesser burden on contract carriers than that imposed on common carriers under Ark. Code Ann. § 23-13-220(a)(1) (1987). This latter section of the code provides that the Board must find that the issuance of a common carrier's certificate is "required by the present or future public convenience or necessity." Neither the phrase "promote the public interest" nor the phrase "public convenience or necessity" are defined in the code provisions.

This court has many times discussed the matter of "public convenience or necessity" and, in one case, *Santee* v. *Brady*, 209 Ark. 224, 189 S.W.2d 907 (1945), quoted the rule as follows:

> The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required.

A "common carrier" is defined in Ark. Code Ann. § 23-13-203(7) (1987) as:

> [A]ny person who or which undertakes, whether directly or indirectly, or by lease of equipment or franchise rights, or any other arrangement, to transport passengers or property or any classes of property for the general public by motor vehicle for compensation whether over regular or irregular routes . . . .

On the other hand, a "contract carrier" is defined in Ark. Code Ann. § 23-13-203(8) (1987) as:

> [A]ny person not a common carrier included under subdivision (7) who or which, under individual contracts or agreements, and whether directly or indirectly or by lease of equipment or franchise rights or any other arrangements, transports passengers or property by motor vehicle for compensation . . . .

In *Craig, Contract Carrier Application*, 31 M.C.C. 705 (1941), the function of a contract or private carrier was described as "nothing more than the devotion of all of a carrier's efforts to the service of a particular shipper, or, at most, a very limited number of shippers, under a continuing arrangement which makes the carrier virtually a part of the shipper's organization."

The relevant provisions of the Arkansas code are obviously patterned after the federal statutes, the Interstate Motor Carriers Act of 1935, as amended, 49 U.S.C. § 301 et seq., as the Arkansas legislation and the federal legislation are almost identical. Both the federal and state regulatory agencies governing common carriers and private carriers make distinctions

between the two classes of carriers. The latest amendments in both statutory schemes continue to carry similar definitions and standards of proof.

The Arkansas code provision governing the issuance of permits for contract carriers, Ark. Code Ann. § 23-13-224 (1987), states that:

> [A] permit for a contract carrier by motor vehicle shall be issued to any qualified applicant if it is found that the applicant is fit, willing, and able to properly perform the service of a contract carrier by motor vehicle and to conform to the provisions of this subchapter and the lawful requirements, rules, and regulations of the Arkansas Transportation Commission, and the proposed operation . . . will promote the public interest and the policy declared in § 23-13-202; otherwise the application shall be denied.

The code also enumerates the considerations which shall be used by the Board in granting permits. The considerations are: (1) the financial condition of the applicant and his sense of responsibility towards the public; (2) the transportation service already being maintained by any railroad, street railway, or motor carrier; and (3) the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which the proposed transportation service may have upon existing services. The Board is also authorized to consider "any other matters" tending to show the necessity or need for granting the application.

■ Traditionally, the criteria for establishing the need for common carriers have been broader in terms and scope than the requirements for granting permits for contract carriers. Therefore, the burden of establishing the need for the restricted authority sought by contract carriers has consistently been less than that required for the broader authority of a common carrier. The common carrier serves the public at large while the contract carrier is restricted to serving the contracting parties.

■ Speaking for the Court in *Interstate Commerce Commission* v. *J-T Transport Company, Inc.*, 368 U.S. 81 (1961), Justice Douglas discussed the presumption that "the services of

existing carriers will be adversely affected by a loss of 'potential' traffic" and further stated that the Commission, by reading this phrase into the law, in essence attempted to amend the act by insertion of a "provision that the Commission sought unsuccessfully to have incorporated into the Act." The opinion also held that "the adequacy of existing facilities or the willingness or ability of existing carriers to render the new service is not determinative. The 'effect which denying the permit would have upon the applicant and/or its shipper and the changing character of that shipper's requirements' have additional relevance." The opinion went on to state that a contract carrier furnishes services which are designed to meet the distinct needs of his individual customers. It was this need that weighed most heavily against the protests of the existing carriers. The opinion continued:

> We see no room for presumption in favor of, or against, any of the five factors on which findings must be made under § 209(b). The effect on protesting carriers of a grant of the application and the effect on shippers of a denial are factors to be weighed in determining on balance where the public interest lies.

The interest of protesting carriers and the effect of an application upon the carriers are to be considered in the balancing process undertaken by the Board when reviewing an application. That interest must not, however, be considered as something to protect the status quo. Rather, the objective is to establish a regime in which additional contract carriers could be approved upon a showing of distinct need on the part of individual shippers. By their nature, the interests of proposed shippers and existing carriers are in conflict.

In the case before us the Board and the circuit court found that the granting of the permit would not diminish the revenue of any of the existing common carriers. Indeed, some of the common carriers are presently hauling for Fina and will continue to haul for it whether or not the permit is granted to the appellee. The Board examined the competing interests with as much diligence as possible. While we need not accept the findings of the Board, we hold that they are not contrary to the preponderance of the evidence. We agree with the opinion in *J-T Transport Company*, supra, which concluded that the applicant must first

demonstrate that the undertaking proposed is specialized and tailored to the shipper's distinct needs. Thereafter, the protestants may present evidence to show that they have the ability as well as the willingness to meet that specialized need. If the existing carriers discharge that burden, it is then the responsibility of the applicant to demonstrate that it is better equipped to meet the distinct needs of the shipper than the protestants.

We believe that a distinct need by the shipper was shown in this case. Moreover, it was demonstrated that specialized equipment was required for the conduct of its business. Given the testimony in this case, it is questionable whether the existing carriers could, either singularly or in combination, furnish the distinct services required by Fina. After considering the facilities and personnel available, the Board considered the cost to the shipper. Moreover, the need appears to have been clearly established, among other things, by the testimony of the shipper that it would have to discontinue shipping by motor carrier if the application were not approved.

We give due deference to the expertise of the Board. It is the Board, not the courts, that, in the first instance, must bring their expertise to bear on making findings and granting or denying applications. However, this expertise must be supported by evidence of the considerations enumerated in the act. We hold that the decisions by the Board and the circuit court were not against the preponderance of the evidence. Therefore the decision of the circuit court affirming the order of the Transportation Board is affirmed.

Affirmed.