**LIBERTY MUTUAL INSURANCE CO., Appellee,**

v.

**Phyllis STATES, Appellant.**

**No. 90–2207EA.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1991.

Decided Aug. 5, 1991.

---

**3.** We note, as did the district court, that it is axiomatic that a thing patented cannot also re- main a secret.

Anthony Avallone of Las Cruces, N.M., for appellant.

Richard Castleman, Pocahontas, Ark., (Bill Penix, Jonesboro, Ark., on brief), for appellee.

Before FAGG and LOKEN, Circuit Judges, HAMILTON,* District Judge.

HAMILTON, District Judge.

In this declaratory judgment action based upon diversity of citizenship, Phyllis States appeals the judgment of the district court that Liberty Mutual Insurance Company (Liberty Mutual), the plaintiff below, is not liable for any losses or damages sustained in any traffic accident involving vehicles owned or operated by Harvey Hughes or L.P. Head. We reverse and remand.

In 1984, L.P. Head (Head) hauled livestock interstate for A.W. Cherry and Sons. He owned three trailers and, under a lease/rental agreement with Saunders Leasing System, Inc. (Saunders), leased tandem-axle tractors to pull the trailers.

Pursuant to the lease/rental agreement, Saunders provided liability insurance to Head under a business auto policy issued to Saunders by Liberty Mutual. Head was, under the terms of the lease/rental agreement, subject to all the terms and conditions of the Liberty Mutual policy and was insured up to certain monetary limits specified in the lease/rental agreement. In particular, Part VI A of the Liberty Mutual policy required the insured to notify Liberty Mutual promptly of any accident or loss and to cooperate with it in the investigation, settlement, or defense of any claim or suit.

In addition, the lease/rental agreement contained the following provisions:

> Every accident must be immediately reported in writing to OWNER [Saunders] at the facility from which the VEHICLE was rented. RENTER [Head] or driver must immediately deliver to such facility or to the insurance carrier any claim, demand, process, pleading or paper of any kind relating to any accident or claim for which OWNER provides liability insurance coverage. RENTER further agrees to cooperate fully with OWNER and/or insurance carrier in all matters connected with the investigation and defense of any claim, suit, or proceeding.

Compliance with the terms, conditions, restrictions and/or prohibitions of the lease/rental agreement was a condition precedent to any insurance coverage and, subject to applicable state law, such coverage could be revoked upon breach of any such term, condition, restriction and/or prohibition without notice to Head.

On October 19, 1984, Randall States died in a highway accident near Forrest City, Arkansas. The accident allegedly occurred when a spare tire fell from an L.P. Head trailer being towed by a Saunders tractor that was driven by Harvey Hughes (Hughes), a Head employee. When his vehicle struck the tire, Randall States was killed.

Thereafter Appellant Phyllis States, personal representative of the estate of Randall States, filed a suit for damages in federal district court against Saunders, Head, and Hughes. Head was served on

---

* The HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri, sitting by designation.

August 14, 1987. Head later testified by deposition that he mailed the suit papers to Saunders at its headquarters in Birmingham, Alabama. When Liberty Mutual became aware of the suit, it attempted without success to locate Head by telephone and by dispatching an adjuster to Head's business in Nashville and to his residence. It then hired an attorney to represent Head in the suit after a default had been entered against him on October 5, 1987.

On March 9, 1988, Liberty Mutual filed this declaratory judgment action in federal district court to determine whether it was obligated under the terms of its policy to pay any damages awarded against Hughes or Head or to defend them in any action brought as a result of the accident in which Randall States was killed.

On appeal Phyllis States contends the district court erred in its determination that Liberty Mutual has no obligation to defend or to pay damages as a result of the accident. She asserts that (1) under Arkansas law [1] and under federal law, the policy defenses relied upon by Liberty Mutual, that is, lack of notice and lack of cooperation by the insured, are inapplicable, and (2) in any event, the evidence fails to support those policy defenses.

■ The trial court's factual findings will not be set aside unless they are clearly erroneous. With respect to the first issue, we review de novo the trial court's legal conclusions regarding both federal and state law. *Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *United States ex rel. Bussen Quarries, Inc. v. Thomas,* 938 F.2d 831, 833 (8th Cir.1991).

■ We disagree with the district court that Liberty Mutual has no liability under Arkansas law. The Arkansas Motor Carrier Act defines "motor carrier" as including "both a common carrier by motor vehicle and a contract carrier by motor vehicle, and

any person performing for-hire transportation service without authority from the [Arkansas Transportation] Commission." Ark.Stat.Ann. § 73–1758(a)(9) (1979) (current version at Ark.Code Ann. § 23–13–203(a)(9) (1987)). A "common carrier by motor vehicle" is defined as "any person who or which undertakes, whether directly or indirectly, or by lease of equipment or franchise rights, or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public by motor vehicle for compensation whether over regular or irregular routes." *Id.* at § 73–1758(a)(7). A "contract carrier by motor vehicle" is defined as follows:

> [A]ny person not a common carrier included under Paragraph 7, Section 5 [this section] of this Act who or which, under individual contracts or agreements, and whether directly or indirectly or by lease of equipment or franchise rights, or any other arrangements, transports passengers or property by motor vehicle for compensation.

*Id.* at § 73–1758(a)(8). A contract carrier devotes its efforts to a particular shipper or a very small number of shippers, which makes the carrier virtually a part of the shipper's organization. *Transport Co. v. Champion Transp., Inc.,* 298 Ark. 178, 766 S.W.2d 16, 19 (Ark.1989).

Head, an interstate carrier of livestock, hauled exclusively for A.W. Cherry and Sons. The trial court determined that Head "was something less than a 'common carrier by motor vehicle' " and so was not subject to Arkansas motor carrier law. Although we agree that Head was not a common carrier as defined in the Arkansas statute, we find that he qualified as a contract carrier and, as such, was subject to Arkansas motor carrier law.

■ The Arkansas Motor Carrier Act creates the Arkansas Transportation Commission which regulates common and con-

---

**1.** The pleadings in the record on appeal raise no issue of Arkansas law. The record reflects, however, that the issue was tried by implied consent of the parties. Fed.R.Civ.P. 15(b). *Pershern v. Fiatallis North America, Inc.,* 834

F.2d 136, 139 (8th Cir.1987); *Karlen v. Ray E. Friedman & Co. Commodities,* 688 F.2d 1193, 1197 n. 3 (8th Cir.1982); *Peterson v. Auto Wash Mfg. & Supply Co.,* 676 F.2d 949, 952 (8th Cir. 1982).

tract motor carriers. Ark.Ann.Stat. § 73–1756 (1979) (current version at Ark. Code Ann. § 23–13–207 (1987)). These carriers must comply with the rules and regulations prescribed by the Commission.

Rule 13.1 of the Arkansas Transportation Commission requires "all carriers by motor vehicle ... to file public liability and property damage insurance or in lieu thereof, a certificate of insurance on the form approved by the Commission with minimum liability as set out in the Arkansas Public Liability and Property Damage Endorsement which must be attached." That rule further provides that "[n]othing contained in the [insurance] policy or any endorsement thereon, nor the violation of any of the provisions by the assured, shall relieve the [insurance] company from ... liability ... or from the payment of [any] judgment."

The policy issued by Liberty Mutual included a Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement which, according to its terms,[2] was filed with the state commission of Arkansas. The endorsement served as proof of financial responsibility and amended the attached policy to provide coverage in accordance with applicable state law.

■ Since Arkansas law states that nothing in the insurance policy may relieve the insurer of liability or payment of final judgment, the endorsement present in this policy nullified Liberty Mutual's defenses of lack of cooperation and lack of notice. Furthermore, since insurance contracts in Arkansas are read to include applicable statutory and public policy provisions in effect at the time the insurance policy is issued, the outcome would be the same even if the policy did not contain the endorsement. *Nichols v. Anderson,* 788 F.2d 1140, 1143 (5th Cir.1986), *on appeal after*

*remand,* 837 F.2d 1372 (5th Cir.1988); *Carner v. Farmers Ins. Co. of Ark.,* 3 Ark. App. 201, 623 S.W.2d 859, 860 (Ark.Ct.App. 1981). Thus, because its claimed defenses are unavailable under Arkansas law, Liberty Mutual is obligated to pay any final judgment rendered against its insured, Head.

Because the state law issue is dispositive, we need not address the federal issue.

We therefore reverse and remand this case to the trial court for entry of judgment against Liberty Mutual on its Complaint for Declaratory Judgment and in favor of States on her counterclaim. Further, the trial court is ordered to determine the amount owed to Phyllis States by Liberty Mutual as a result of its insurance coverage of Head.

---

**2.** That endorsement states in pertinent part:
   1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.