4 F.3d 567
 LIBERTY MUTUAL INSURANCE CO., Appellant,
v.
ELGIN WAREHOUSE AND EQUIPMENT; L.P. Head, Defendants
Phyllis States, Appellee.
Phyllis STATES, as personal representative of Randall W.
States, deceased, Plaintiff,
v.
L.P. HEAD, Defendant.
 No. 92-2687.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1993.
Decided Aug. 19, 1993.
Order Denying Rehearing En Banc Sept. 13, 1993.
 
 John Robin Nix, Jonesboro, AR, argued (Bill Penix, on the brief), for appellant.
 Anthony F. Avalone, Las Cruces, NM, argued (Thomas R. Figart, on the brief), for appellee.
 ON PETITION FOR REHEARING
 Appellant's petition for rehearing has been considered by the court and is granted. The opinion and judgment of this court filed on June 29, 1993, are vacated and the attached opinion is being filed in their stead.
 Before WOLLMAN and BEAM, Circuit Judges, and NANGLE,* Senior District Judge.
 BEAM, Circuit Judge.
 
 
 1
 This is the second time this controversy has reached this court. Earlier, Liberty Mutual Insurance Co. (Liberty) requested a declaratory judgment that it had no duty to defend its insured, L.P. Head (Head), and that it was not responsible for any damages arising out of Head's liability for a fatal traffic accident. Phyllis States (States), the decedent's widow, filed a counterclaim contending that Liberty was responsible for her judgment against Head. The district court found for Liberty, and this court reversed. Liberty Mut. Ins. Co. v. States, 940 F.2d 1179 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 874, 116 L.Ed.2d 778 (1992) (Liberty I ). We ordered the district court to enter judgment for States and to assess her damages. Id. at 1182. The district court entered judgment for States, awarding damages of $377,796.65. Liberty appeals. We affirm.
 
 I. BACKGROUND
 
 2
 In October 1984, a tire fell onto an Arkansas road from a truck allegedly driven by Head's employee and leased by Head from Saunders Leasing Systems, Inc. (Saunders). Another truck, driven by Randall States, struck the tire and plunged approximately sixty feet off a bridge. The accident killed Randall States.
 
 
 3
 Liberty insured Saunders under a master policy. This policy permitted Saunders to offer insurance to those who rented its trucks. It also covered those using Saunders' trucks with Saunders' permission except lessees who rejected Saunders' coverage and agreed to provide other insurance. That policy's liability limit is $1,000,000. Head, an interstate livestock hauler, was a regular customer of Saunders who rented Saunders' trucks for months at a time, renewing his rentals on a weekly basis. In the rental agreement, Head accepted Saunders' coverage. The fine print on the back of the rental agreement set the liability coverage at $250,000. Head paid Saunders a mileage-based fee for this coverage. Saunders in turn paid mileage-based insurance premiums to Liberty.[1]
 
 
 4
 Some time after the accident, Phyllis States and her daughter filed a diversity action in district court against Head, Saunders, and the driver of the truck. By July 1986, Liberty had learned of the lawsuit against its three insureds and knew of its exposure due to its coverage of the three. Liberty tendered a defense for Saunders, but not for Head or the driver because, although named parties, neither had been served with process at that time. Liberty instead monitored the docket for their service of process. Head was served on August 14, 1987. Unaware of Liberty's identity, he sent the process papers to Saunders by certified mail. Saunders misplaced the papers. On October 5, 1987, the clerk entered a default judgment against Head. Finally, Liberty hired an attorney to defend Head. It was not until late November 1987, that a motion to set aside the default was filed on Head's behalf. The motion was denied.
 
 
 5
 In March 1988, Liberty filed for a declaratory judgment that it had no duty to defend Head and was not liable for any judgment against Head arising out of the underlying accident. Liberty argued that Head's violation of the policy's cooperation clause negated its otherwise admitted duty to defend him, and that neither Arkansas nor federal law, which void the operation of such policy defenses against injured third parties in commercial contexts, applied. In response, States filed a counterclaim based on her judgment against Head. She argued that Head did cooperate and that Liberty's noncooperation defense was void as to innocent injured third parties under both federal and Arkansas law. After trial, the district court entered judgment for Liberty on all grounds. Liberty Mut. Ins. Co. v. Hughes, No. H-C-88-20, mem. op. (E.D.Ark. July 2, 1990).
 
 
 6
 In Liberty I, the panel reversed the district court and found Liberty liable for States' damages. Liberty I, 940 F.2d at 1179. The panel declined to consider either the federal law or the cooperation issue, because the policy contained an Arkansas endorsement and therefore Arkansas Transportation Commission Rule 13.1 voided the noncooperation defense. Liberty I, 940 F.2d at 1181-82. The panel remanded to the district court for entry of judgment in favor of States and for a determination of States' damages. Id. On remand, the district court scheduled the damages hearing for November 6, 1991, and ordered any party wishing to present an issue other than the amount of damages due to States from Head to inform the court by motion and brief filed before October 11, 1991.
 
 
 7
 On November 1, 1991, three weeks after the motion deadline, more than three years after initiating its declaratory judgment action, nearly six years after States initiated her suit, and after the mandate had issued on the previous appeal, Liberty filed a motion in district court arguing for the first time that its liability was limited to $25,000 under Arkansas law. The district court conducted the damages hearing, and found States' damages to be $377,796.65. After reviewing our opinion and States' opposition to Liberty's belated motion to limit its liability to $25,000, the district court held Liberty liable under the policy for the full amount of States' damages. Liberty appeals, arguing that our prior opinion did not declare the limit of its liability and that the judgment exceeds the policy limits.
 
 II. DISCUSSION
 
 8
 Liberty raises two policy-limit arguments on appeal: 1) Arkansas law limits Liberty's liability to $25,000; and 2) Saunders' rental agreement with Head limits Liberty's liability to $250,000. Both of these arguments are now unavailable to Liberty as Liberty I decided those issues against it. The mandate in that case has long been issued and its holdings are now the law of the case.[2]
 
 A. The Law of this Case
 
 9
 Liberty's contention that our prior opinion in this case left open the question of whether its liability was limited to $25,000 is a misreading of that opinion. In Liberty I, the panel was faced with three issues: 1) whether the district court erred in determining that Head failed to "cooperate;"[3] 2) whether federal law voided the noncooperation defense as to States; and 3) whether Arkansas law voided the noncooperation defense as to States. Liberty I, 940 F.2d at 1181. The panel did not find it necessary to reach the first two issues, because it found in favor of States on the third issue. If the amount of coverage had varied by issue, or theory of recovery, the panel would have considered all three.
 
 
 10
 The only fair reading of the prior opinion is that the panel found that under Arkansas law, Liberty was liable up to the $1,000,000 policy limit. If the panel found that Head had cooperated, coverage would have been either $1,000,000 or $250,000, depending on whether the court focused exclusively on the insurance contract which by its terms covered Head, see Allstate Ins. Co. v. Sullivan, 643 S.W.2d 21 (Mo.Ct.App.1982), or considered the rental agreement as an amendment to the insurance contract. The later proposition raises unlicensed insurance concerns which we note, but need not reach. If the panel found the federal MCS-90 endorsement[4] in Liberty's policy applied to Head, or found, under the facts of this case, that a comparable de facto MCS-90 endorsement had been issued on Head's behalf, coverage would have been either $500,000 or $1,000,000. By reaching only the Arkansas law theory of recovery, which arguably was worth $25,000 (Arkansas's statutory minimum coverage), $250,000 (the rental contract coverage), or $1,000,000 (Liberty's policy limits), the panel impliedly decided the limits of liability question. A panel would not relegate a party with three theories of recovery, one of which was worth either $250,000 or $1,000,000, one of which was worth either $500,000 or $1,000,000, and one of which was worth only $25,000 or $250,000 to the least advantageous theory without an explanation of why the other, more advantageous, theories failed. By finding it unnecessary to address the first two theories, the prior panel implicitly decided that the third theory provided recovery comparable to or better than the recovery provided by the first two. That is, it decided that Liberty was liable up to its $1,000,000 policy limit under Arkansas law.[5]
 
 B. Law of the Case Doctrine
 
 11
 Historically, federal courts considered the law of the case doctrine to be jurisdictional in nature. In the context of a second or subsequent appeal, any questions answered in a prior appeal were considered to be no longer in controversy. Therefore, there was no case or controversy on which to base jurisdiction over those settled issues. See 1B James W. Moore, et al., Moore's Federal Practice, p 0.404, 0.404[4.-4] (2d ed. 1993).
 
 
 12
 Currently, the doctrine has been recast as one of discretionary restraint. In the interests of finality, a subsequent appeals panel should revisit those issues implicitly or expressly decided by a prior panel only with reluctance. It will not disturb a prior panel's decision unless intervening controlling authority has reached a contrary decision, or unless the prior panel decision was clearly erroneous and letting it stand would work a manifest injustice.[6] Merritt v. Mackey, 932 F.2d 1317, 1320 (9th Cir.1991); see Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 578 F.2d 727 (8th Cir.1978); 1B Moore's, p 0.404[4.-5]. In this circuit only an en banc court may overrule a panel decision, thus adding another layer of complexity to any law of the case analysis.[7]
 
 
 13
 Liberty makes no allegation of controlling intervening authority. Therefore, we focus on the clearly erroneous and manifestly unjust exception to the doctrine.
 
 C. Clear Error and Manifest Injustice
 
 14
 Liberty does not contest the correctness of the prior panel's decision that Arkansas Transportation Commission Rule 13.1 applies to its insurance of Head, or that Rule 13.1 operates to void the application to States of any policy defense Liberty may have against Head. See Liberty I, 940 F.2d at 1181-82; Special Rules Governing Carriers before the Arkansas State Highway Commission, Rule 13.1 (1984) (Arkansas Transportation Commission Rule 13.1). Instead, it argues that its Arkansas endorsement, in conjunction with Rule 13.1, limits its liability to $25,000. Liberty is mistaken.
 
 Rule 13.1 states, in pertinent part:
 
 15
 In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives a description of the motor vehicles to be insured hereunder, and agrees to pay final judgment for personal injury, including death, resulting therefrom ... caused by any and all motor vehicles operated by the assured whether ... it be an additional, substitute or emergency vehicle operated under any certificate, license, or permit by any order or rules of the Arkansas Transportation Commission within the limits of the schedule hereinafter set out, and further agrees that upon its failure to pay such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor violation of any of the provisions, by the assured, shall relieve the company from the liability hereunder or from the payment of such judgment.
 
 
 16
 The liability of the company shall be the damage sustained to persons or property within the limits of the schedule set out below, except that the insured may file a policy with the limits of the liability greater than the minimum as set out in the schedule.
 
 
 17
 Arkansas Transportation Commission Rule 13.1 (emphasis added).
 
 
 18
 The rule shifts the risk of an insured's misconduct vis-a-vis an insurer away from the injured third party and leaves that risk between the insured and the insurer. The net effect of the rule is to put the risk of a judgment-proof insured violating a condition of the insurance policy on the insurer, rather than on the injured third party. This rule is eminently reasonable, for the insurer can screen its insureds for poor risks, both as to accidents and as to compliance with policy duties, and can adjust its rates accordingly. This risk assessment and risk spreading is the heart of the insurance business. In contrast, injured third parties have no control over the circumstances of their encounter with the insured.
 
 
 19
 Liberty's Arkansas endorsement reads, in pertinent part:
 
 
 20
 The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.
 
 
 21
 Appellee's Addendum, p. 8 (emphasis added).
 
 
 22
 Construing this endorsement in its statutory context, and in view of Rule 13.1's objective to assure recovery to injured third parties, the prior panel's interpretation of both the rule and the endorsement as providing minimums and not maximums is correct.
 
 
 23
 Since the prior panel opinion was correct, we need not consider whether it was manifestly unjust to hold Liberty liable up to its $1,000,000 policy limit when Rule 13.1 operated to void a policy defense. However, were we to reach the question, our prior discussion of the risk-shifting purpose of Rule 13.1 coupled with Arkansas's canons of insurance contract interpretation and the split among the states as to whether policy or statutory minimum limits of liability apply in similar cases, all preclude finding the result unjust. See Nichols v. Anderson, 837 F.2d 1372, 1375 (5th Cir.1988) (states split on what limits apply in somewhat similar situations). Therefore, nearly ten years after Randall States' death, we affirm the district court's order that Liberty pay States damages of $377,796.65.
 
 III. CONCLUSION
 
 24
 For the reasons stated above we affirm the district court's judgment in all respects.
 
 ORDER
 
 25
 Sept. 13, 1993.
 
 
 26
 The suggestion for rehearing en banc is denied. The petition for rehearing was granted and the panel's opinion was modified.
 
 
 27
 HANSEN, Circuit Judge, concurring in the denial of rehearing en banc, joined by RICHARD S. ARNOLD, Chief Judge, and FAGG, Circuit Judge.
 
 
 28
 Because I agree with the panel's disposition of this case I decline to vote to rehear it en banc. While I have no quarrel with the result, I share the dissent's concerns about a successive panel's willingness to revisit an issue in depth when a prior panel has clearly decided an issue or issues in the same case. I am particularly concerned about such a tendency when the prior panel's opinion has withstood a suggestion for rehearing en banc on its own. While that additional factor is not present here, it may well appear in the next case. The dissent's clear warning should be heeded by us all in the future.
 
 
 29
 JOHN R. GIBSON, Circuit Judge, dissenting from the denial of rehearing en banc, joined by Judges McMILLIAN, BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 
 
 30
 I would grant rehearing en banc in this case simply to summarily dispose of the discussion of the law of the case doctrine in Part II B.
 
 
 31
 I have no quarrel with the opinion's statement of the governing principles and authorities. Ordinarily one would not write simply to disagree with the way an opinion is worded. In this case, however, the panel opinion engages in a lengthy discussion and concludes that the first panel's opinion was correct. The power to conclude that an earlier opinion is correct carries with it the concomitant power to determine that it is incorrect. This is an area of substantial significance that I believe should be considered by the entire court. The burden was on Liberty Mutual to show that the first panel opinion was clearly erroneous, and in my view it came nowhere close to meeting this burden, and summary disposition was in order.
 
 
 32
 I view the issue as one of serious institutional significance. This court has had a substantial increase in filings in the last years, mirroring the increase in the federal courts of appeals nationally. There were 2,049 filings in the year ending June 30, 1986, and 3,185 in the year ending the same date 1993. Here, in a diversity case, the panel has meticulously retraced the steps of the first panel. This practice encourages litigants in future cases to seek reconsideration of issues that should have been put to rest.
 
 
 33
 As an institution, we simply cannot reexamine earlier decisions and keep pace with this increased workload. Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 578 F.2d 727 (8th Cir.1978), is one of the few cases where a panel has held that an earlier panel's opinion was in error. I think we should delineate as a court en banc, what extraordinary circumstances would constitute clear error justifying full treatment by a later panel. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).
 
 
 34
 I would affirm, but I would do so without extended discussion of Liberty Mutual's attempt to relitigate the first panel's decision. The law of the case doctrine is important to litigants, trial courts, and this court, and should not be watered down. We should not encourage repeated appeals by the "obstinate litigant." Roberts v. Cooper, 61 U.S. (20 How.) 467, 481, 15 L.Ed. 969 (1857), quoted in White v. Murtha, 377 F.2d 428, 431 (5th Cir.1967), adhered to on rehearing, 381 F.2d 34 (5th Cir.1967). Certainly, the panel did not intend such a result, but I am concerned that this subliminal message will emanate from its opinion.
 
 
 
 *
 The Honorable JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 Liberty estimated Saunders' insurance premiums for the 24-month period of August 1, 1984, through August 1, 1986, to be over $900,000
 
 
 [2]
 Even if Liberty I had left the question of liability limits open, we would not consider Liberty's $250,000 argument because Liberty did not raise that argument before the district court. See United States v. Garrido, 995 F.2d 808, 815 (8th Cir.1993) (failure to request a ruling on an issue arguably before the district court results in waiver of that issue on appeal); Nolte v. Pearson, 994 F.2d 1311, 1315 (8th Cir.1993) (issues not raised below will not be considered on appeal absent injustice or plain error). In the original declaratory judgment action, States argued to the district court that Liberty's $1,000,000 policy limit applied to Head. Liberty responded that the rental agreement limited its liability to $250,000. On remand, however, Liberty did not reassert the $250,000 limit. Liberty abandoned that argument in favor of its argument for a $25,000 liability cap. States, relying on Liberty I and the policy, persisted in arguing that the $1,000,000 policy limit applied. The district court's ruling that the $1,000,000 limit applies is supported by the evidence and by the law. We find no plain error or injustice
 
 
 [3]
 We note that the "noncooperation" defense in the insurance context is stringently limited and that determining whether it may be successfully asserted is not a trivial task. See Billington v. Interinsurance Exch. of So. Cal., 71 Cal.2d 728, 79 Cal.Rptr. 326, 456 P.2d 982 (1969)
 
 
 [4]
 This is a liability insurance endorsement federal law requires most interstate carriers to obtain
 
 
 [5]
 A look at the merits of the issues the panel did not address is also instructive. On the issue of noncooperation, a careful review of the district court record, as well as the parties' briefs in the first appeal, reveals that Head cooperated in the relevant time period, and that the defense of noncooperation was not available to Liberty. When Head was served, he sent the suit papers by certified mail to Saunders, Liberty's unlicensed agent. Saunders misplaced the papers. A default judgment was entered against Head. Head did not cause the default; Saunders' misplaced the papers and that misplacement is attributable to Liberty. Liberty had actual notice of the suit against Head over a year before the default, and may not attempt to avoid the consequences of its own mistakes by attributing them to the insured. Carter v. Aetna Casualty & Sur. Co., 473 F.2d 1071 (8th Cir.1973) (noncooperation defense unavailable where insurer had actual notice of suit but tendered no defense before default, even though insured agreed to default in exchange for release from personal liability); see also Nationwide Mut. Fire Ins. Co. v. Dunkin, 850 F.2d 441, 443 (8th Cir.1988) (noncooperation defense successful where insured's conduct made it impossible for insurer to defend insured); Lindus v. Northern Ins. Co., 103 Ariz. 160, 438 P.2d 311, 315 (1968) (to successfully assert the noncooperation defense, insurer must show, in good faith, that it was actually hampered by noncooperation of insured); Billington, 456 P.2d at 987 (insurer must show a substantial likelihood it would have prevailed but for noncooperation in order to prove defense). The default judgment was in no way caused by or attributable to Head. Therefore, noncooperation was unavailable to Liberty as a defense against that judgment
 If Liberty did not desire Saunders to act as its agent for receipt of suit papers, it had a duty to direct Saunders to instruct those renting Saunders' trucks to notify Liberty, as well as Saunders, in case of suit. We will not permit an insurance company to insure rental vehicles, and then to evade its coverage responsibilities by remaining anonymous to the renters of those vehicles.
 
 
 [6]
 Generally, parties must bring any perceived errors in a panel opinion to the court's attention through a petition for rehearing. This procedure balances the concerns of fairness and accuracy with those of finality. Further, the court liberally grants extensions of time for the filing of petitions for rehearing, thus making every effort to promote both fairness and accuracy. Parties are well-advised to avail themselves of that procedure if they consider an opinion to be in error, rather than to wait until the mandate has issued and attempt in a subsequent appeal to surmount the law of the case doctrine's prudential hurdles
 
 
 [7]
 Arguably the en banc rule is incompatible with a subsequent panel deviating from the law of the case established by a prior panel decision (as opposed to an administrative action). However, while we arguably extend such power to a subsequent panel, see Wrist-Rocket, 578 F.2d at 730-31, we need not consider this issue because we do not find the prior panel decision to be either clearly erroneous or unjust