Ronald D. NICHOLS, Plaintiff-Appellee,

v.

Nancy ANDERSON, et al., Defendants,

and

Canal Insurance Company,
Garnishee-Appellant.

ALLSTATE INSURANCE COMPANY,
Plaintiff-Appellee,

v.

CANAL INSURANCE COMPANY,
Defendant-Appellant.

No. 87–4501.

United States Court of Appeals,
Fifth Circuit.

Feb. 25, 1988.

---

3. The defense is barred by the *D'Oench, Duhme* doctrine, *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

Michael B. Wallace, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., for Canal Ins. Co.

King & Spencer, Larry Spencer, Jackson, Miss., for Nichols.

Whitman B. Johnson, III, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for Allstate.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Canal Insurance Company, a defendant in this Mississippi diversity case, appeals the district court's judgment for the plaintiffs. Based on our earlier decision, 788 F.2d 1140, holding invalid a radius-exclusion clause in an Arkansas insurance contract, the district court ruled that the insurer should be liable for the entire amount of the policy. The district court also found the insurer liable for interest under a supplementary payments provision in the insurance contract even though primary liability arose solely through the operation of law. Finally, the district court concluded that Mississippi law provided for contribution between parties with a common liability. We affirm in part, reverse in part, and modify in part.

I

The facts of this case are fully set forth in *Woods v. Nichols*, 416 So.2d 659 (Miss. 1982) [hereinafter *Nichols I*]. We note only those facts that are relevant to this appeal.

Nichols, a Mississippi resident, was permanently injured in an automobile accident

near Flora, Mississippi on January 31, 1979. The accident was caused by the combined negligence of Larry Brooks and Jerry Woods. The Mississippi Supreme Court affirmed a judgment in favor of Nichols against Woods and Brooks for $550,000. *Id.*

At the time of the accident, Brooks was covered by a liability insurance policy issued by Allstate Insurance Company to Nancy Anderson (the owner of the car Brooks was driving). Allstate paid its policy limits, plus interest and penalties, in the total amount of $130,151.15.

Woods, who was driving a truck at the time of the accident, was insured for $100,-000 under a liability policy issued by Canal. This policy contained an exclusion clause limiting the coverage to accidents within 150 miles of McCrory, Arkansas. Although part of Mississippi is within this limit, the accident occurred outside the 150 mile radius. Thus, Canal disclaimed liability.

Nichols brought a garnishment procedure against Canal to enforce his judgment against Woods. Allstate sued Canal for contribution of one-half of what it had paid Nichols. These cases were consolidated.

On a previous appeal of these cases, this court found that Arkansas law should apply to a determination of the validity of the radius-exclusion clause. *Nichols v. Anderson*, 788 F.2d 1140, 1142 (5th Cir. 1986) [hereinafter *Nichols II*]. Arkansas law requires that "common carriers," such as Woods, carry minimum liability insurance as prescribed by the Arkansas Transportation Commission. Ark.Stat.Ann. § 73–1768. Rule 13.1 of this Commission contains a schedule of minimum coverage limits and requires at least $25,000 of personal injury coverage. The Rule further provides:

> Nothing contained in [an insurance] policy or any endorsement thereon, nor the violation of any of [its] provisions, by the assured, shall relieve the [insurer] from [its] liability hereunder or from the payment of [any final] judgment.

In *Nichols II*, this court invalidated the radius-exclusion provision, finding that it conflicted with the intent of this Rule. On petition for rehearing, the court clarified, however, that in *Nichols II*, "[i]t was not our intent to decide whether Canal's liability is limited to the minimum amount required under the Arkansas law we relied on ($25,000) or to the limits of its insurance policy ($100,000). That issue is to be first addressed by the trial court on remand." 788 F.2d at 1144. After our decision, Canal paid $25,000.

On remand, the district court decided, on cross motions for summary judgment, the extent of Canal's liability. The court found Canal liable to the limits of the insurance policy—$100,000. The district court also found Canal liable for interest under the supplementary payments provision of its insurance contract and for contribution to Allstate. Canal appealed.

## II

■ Our first issue in this case is to decide how much liability Canal should face as a result of the invalidation of its radius-exclusion clause. Both parties present persuasive arguments in support of their contentions.

Canal argues that, because Rule 13.1 voided its unlawful radius exclusion, its liability because of this accident arose only through the operation of law; in other words, Arkansas law provided coverage where the policy did not. Thus, coverage should exist as provided for under the Arkansas law, which means Canal should be liable for only the $25,000 amount specified in the statute. It would be unusual, Canal argues, to find that public policy imposed liability for failure to provide sufficient coverage while also finding that the same public policy required greater coverage than that specified in the Rule effecting that policy. In other words, Canal argues that it should be burdened only in the amount required to carry out the dictates of the public policy that it violated with its radius-exclusion clause.

Nichols counters this argument with general contract law principles. The contract in this case used a standard form which

provided $100,000 coverage anywhere in the United States or Canada. Attached to this contract was an endorsement that limited coverage to accidents within 150 miles of McCrory, Arkansas. In *Nichols II,* however, this court found that endorsement to be void as against Arkansas public policy. Thus, Nichols argues, this court scratched through the endorsement with "a black magic marker," nullifying any effect it might have had. As a result, the contract should be read as if the endorsement never existed. When the contract is read without that void radius provision, of course, it provides $100,000 coverage anywhere in the United States or Canada.

Nichols also argues that the provisions of the Rule are not to be inserted into the policy as new terms, but rather should act only to set minimum amounts used to void provisions that do not meet those amounts. Additionally, Nichols notes that Canal drafted the contract and, consequently, it should bear the responsibility for not specifically limiting damages to the minimum amount allowed. Contracts, Nichols notes, are to be construed against their drafters.

It is important for us to remember that in this diversity case we are bound to follow state law. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Nichols II,* we determined that Arkansas law should apply to the substantive contract claims. Thus, in determining whether the voiding of the radius-exclusion clause makes Canal liable for its entire policy limit or only the minimum amount required by Arkansas law, we must attempt to forecast which course the Arkansas Supreme Court would follow. *See generally* 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4507 (1982). Our duty is not to impose what we believe to be the better rule but only to determine which rule we believe Arkansas would choose. *See Green v. Amerada-Hess Corp.,* 612 F.2d 212 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). In this case, we are unaided by any prior Arkansas decisions. We are unable to find any related decisions of the Arkansas Supreme Court or any other Arkansas court. Thus, we must look to outside legal sources, such as decisions of other jurisdictions or Restatements of Law, to aid us in our determination. *Nicholson v. Life Insurance Co. of Southwest,* 783 F.2d 1316, 1319 (5th Cir.1986).

Both sides in this dispute claim that a clear majority of states support their position. A detailed review of those cases in this opinion would serve little purpose. From our reading of the cases cited by the parties, however, all that we can discern is that the states are completely split. *Compare Meyer v. State Farm Mutual Automobile Insurance Company,* 689 P.2d 585 (Colo. 1984) (en banc); *Missouri Medical Insurance Company v. Wong,* 234 Kan. 811, 676 P.2d 113 (1984); *Allstate Insurance Company v. Sullivan,* 643 S.W.2d 21 (Mo.Ct.App.1982) (liable for policy limits) *with State Farm Mutual Insurance Company v. Shelly,* 394 Mich. 448, 231 N.W.2d 641 (1975); *Farm Bureau Auto Insurance Company v. Martin,* 97 N.H. 196, 84 A.2d 823 (1951); *Estate of Neal v. Farmers Insurance Exchange,* 93 Nev. 348, 566 P.2d 81 (1977); *Tibbs v. Johnson,* 30 Wash.App. 107, 632 P.2d 904 (1981) (liable for minimum statutory requirements). There is no clear majority rule.

The *Restatement of Contracts* generally discusses the effects of a finding that a term of a contract is unenforceable as against public policy. *Restatement (Second) of Contracts* §§ 178–185 (1981). Subsection 184(1) states that if less than all of a contract violates public policy, the rest of the contract may be enforced unless the unenforceable term is an essential part of the contract. Clearly in this case we should not void the entire insurance contract, for such an action would contravene the Arkansas policy requiring minimum coverages. Subsection 184(2) expands the *Restatement*'s rule and applies it to the specific term that was found to violate public policy. According to that subsection, a court may treat only part of a term as invalid if the parties acted in good faith. This rule is intended to apply when a term is invalid because it is too broad and a narrower term would be enforceable. *Id.*

§ 184 comment b. An example of this rule is as follows:

A sells his grocery business to B and as part of the agreement promises not to engage in that business "within the city where the business is situated or within a radius of fifty miles." The provision is fairly bargained for. A's promise involves an unreasonable restraint of trade because the business extends within the city and over a radius of only twenty-five miles. Although part of A's promise is unenforceable on grounds of public policy (§ 188), it is enforceable with respect to the city and twenty-five miles.

*Id.* illustration 3.

This illustration is analogous to the current case. Nichols does not allege that Canal has acted in bad faith, because no radius-exclusion clause had ever before been invalidated in Arkansas. Clearly, the clause was fairly bargained for, and both parties intended coverage only within 150 miles. Moreover, Nichols concedes that Canal could have written a valid policy that provided coverage of $100,000 within 150 miles and $25,000 outside that limit. Of course, Canal did not expressly set those policy limits. Instead, Canal's policy provided $100,000 of coverage within 150 miles and zero coverage outside that radius. We struck the clause reducing coverage to zero because it went too far. It did not provide the minimum $25,000 coverage required by Arkansas public policy. In other words, the coverage restriction was too broad, while a narrower restriction—$25,000— would have been valid. The *Restatement*'s rule would adjust the contract as little as possible to enable the parties to have a contract as close to what they originally intended as possible. We see no indication that Arkansas would not follow this general rule.

Thus, after our earlier holding that the radius-exclusion clause was void as against public policy, we now hold that the clause is void only to the extent required to meet the public policy. Because Canal invalidly, but in good faith, attempted to limit its liability to zero outside the 150 mile radius, and because Arkansas requires at least $25,000 of coverage, we find that Canal should be liable for $25,000.

III

The next issue that confronts us concerns Canal's liability for interest under a supplementary payments provision of the insurance policy. That provision states:

The company will pay, *in addition to the applicable limit of liability:*

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon....

(emphasis added).

The district court held that under this provision of the contract, Canal agreed to pay interest on the entire amount of a judgment rendered in any suit it defends until it ultimately pays whatever it owes. Thus, the court found that Canal must pay interest on the sum of $275,000 from January 13, 1983 (the date on which Allstate paid its policy limits plus all interest accumulated to date on the original judgment of $550,000) until December 10, 1986 (the date on which Canal paid $25,000, which it believed was due as a result of this court's prior decision), plus interest on $250,000 ($275,000 − $25,000) from December 10, 1986 until payment of the additional $75,000 which the court found due under the policy.

Canal, by contrast, argues that it agreed to pay interest only on claims for accidents arising under the policy and not on claims for those accidents for which liability arises under state law. It notes first that the state law that creates its liability requires no interest. Canal also points to the "terrible dilemma" that a decision allowing recovery of interest would create: the possibility of facing interest payments on the entire judgment might cause them to pay off the claim rather than litigate it.

Canal's policy arguments cannot prevail, because specific contractual language governs this situation. *See generally Knippen v. Glens Falls Ins. Co.*, 564 F.2d 525, 529 (D.C. Cir.1977) (finding that broad policy arguments cannot negate the plain language of a supplementary payments provision). The contract says that Canal will pay, in addition to "the applicable limit of liability," interest on the full judgment in any case it defends until it pays what it owes. In this case, the company defended its insured and lost a $550,000 judgment. Regardless of whether the "applicable limit of liability" set by this court was $25,000 or $100,000, the contract specifically states that the interest is payable "in addition to" that limit.

Canal's primary liability in this case does arise only through the operation of law. Nevertheless, the law clearly sets forth only minimum requirements and contemplates that insurers may contract for greater coverage. The supplementary payments clause, unlike the primary insurance clause which provided no coverage, clearly demonstrates the parties' intention to provide additional coverage; this intention is nowhere clearer than in the term, "in addition to" the policy liability. Had this case fallen within the scope of the original policy, the policy limits would not have limited payments under this provision. *See, e.g., id.* at 531. We see nothing in the contract indicating any intention that this provision should not apply when those policy limits are altered by the operation of law.

Canal's interest-accrual "dilemma" is caused only by a contract to which it voluntarily agreed. Even under that contract, the company had the opportunity to stop the accrual of interest by paying into court the maximum amount for which it could be liable—$100,000. Therefore, we do not view Canal's dilemma as a notably "terrible" one.

Canal agreed to pay interest in addition to the "applicable limit" of liability. Because we held that the limit is $25,000,

Canal now owes interest for the period ending on the day it paid the $25,000.

## IV

■ The final issue before us involves the Mississippi law of contribution.[1] Allstate's policy had a supplementary benefits clause like the one in the Canal policy. After the $550,000 judgment was rendered in this case, Allstate paid its policy limits plus $130,151.15 in post-judgment interest and statutory appeal penalties. The district court found that because Allstate "paid *all* the interest and penalties jointly owed on the state court judgment," it was entitled to contribution from Canal of one-half of the payment.

> The Mississippi Supreme Court has said: [t]he doctrine of contribution requires that persons having a common liability, such as [a] joint and several judgment ..., bear their individual share of the burden imposed and not have any one of them carry the full load. The general rule of common law is that one who is compelled to satisfy, or pay more than his just share of such common burden or obligation, is entitled to contribution....
>
> Contribution was generally allowed at common law except that no contribution could be had between tort-feasors or wrongdoers....

*Celotex Corp. v. Campbell Roofing & Metal Works, Inc.*, 352 So.2d 1316, 1318 (Miss. 1977) (en banc). The court went on to say that this barrier to contribution had been removed by statute, except in cases of willful or criminal acts. Most importantly, the court noted that the general common-law contribution rules for those with a "common liability" still exist. *Id.* Thus, Mississippi allows contribution between both joint and several tortfeasors and those with a common liability.

Contribution is an equitable remedy. Canal and Allstate were both liable for the accruing interest and the costs of litigation. Canal would be unjustly enriched if All-

---

1. Both parties agree that Mississippi law should apply to this issue. Therefore, we do not ad-

dress the *choice-of-law question.*

state's payment were to relieve it of liability. Fairness dictates that Canal and Allstate should share the burden of these costs, because both companies contracted to pay the whole amount. In addition, Allstate should not be penalized for having concluded its litigation in this case before Canal. Thus, we hold that because either Canal or Allstate could have been forced to pay this entire cost, they have a "common liability" for the purposes of contribution. Therefore, the district court was correct in awarding contribution to Allstate.

### V

Because the radius-exclusion clause was invalid as against a state public policy requiring $25,000 of coverage, Canal's primary liability is $25,000. Canal is also liable for the additional interest and costs for which it contracted, which continued to accrue until it paid the $25,000 on December 10, 1986. Finally, Canal is liable to Allstate for contribution as determined by the district court.

For the reasons set forth in this opinion, the judgment of the district court is REVERSED as to the primary liability, MODIFIED as to the amount of interest, and AFFIRMED as to contribution.