# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01100-SCT

*CLEMENT ALLEYNE AND GENE BAINES*

*v.*

*THEODORE JONES, TRUSTMARK NATIONAL BANK, KEN R. ADCOCK, NOT INDIVIDUALLY BUT AS TRUSTEE, JAMES C. "SAM" BRADFORD, GEORGE A. JONES, III AND CLINTORIA I. JONES*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/93 |
| TRIAL JUDGE: | HON. WILLIAMS CHARLES BELL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | CRAIG D. BLUNTSON |
| ATTORNEY FOR APPELLEES: | STEPHEN H. LEECH, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/5/98 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

This appeal is from the Chancery Court of the First Judicial District of Hinds County and involves a controversy among present and former shareholders/directors of a dental clinic. Following a dispute, Drs. Alleyne and Baines abandoned/withdrew from JABB Systems, Inc., a corporation organized and formed for the purpose of providing dental services. As the remaining shareholder/director, Dr. Jones was forced to restructure corporate financial obligations via refinancing in order to maintain the corporation. Thereafter, Drs. Alleyne and Baines filed suit alleging fraud, breach of fiduciary duty, conspiracy and unlawful placement of a cloud on the title of corporate property. Dr. Jones counterclaimed alleging unjust enrichment, breach of fiduciary duty, and interference with business relationship. Additionally, Trustmark National Bank filed a cross claim against Dr. Jones seeking payment for all unpaid principal and interest on the promissory note and attorneys fees.

Following trial on January 11-12, 1993, the Special Chancellor found that the plaintiffs failed to sustain their burden of proof on any of the claims asserted against Dr. Jones and ordered pro-rata contributions by Drs. Alleyne and Baines for unpaid corporate expenses. Judgment was entered in favor of Trustmark and against Dr. Jones on the promissory note, and the Chancellor ordered that Drs. Alleyne and Baines contribute to the amount of this judgment. Aggrieved by the judgments against them, Drs. Alleyne and Baines now appeal to this Court. Finding no error in the proceedings below, we affirm.

## FACTS

JABB Systems, Inc. (hereinafter "JABB") was organized in 1984 by Drs. Theodore Jones, Clement Alleyne, Gene Baines, and Carl Boykins[1] for the purpose of providing dental services. In 1986, JABB purchased real estate located on 4510 Hanging Moss Road in Jackson, Mississippi to be used as dental offices. Financing was secured through Deposit Guaranty National Bank, (hereinafter "Deposit Guaranty") and the loan was secured by a deed of trust on the land and guaranteed by the Small Business Administration (hereinafter "SBA"). The loans were also secured by deeds of trust on the personal residences of Drs. Alleyne and Baines and commercial property owned by Dr. Jones. Financing was also obtained for the purchase of dental equipment.

During March of 1988, dissension among the JABB shareholders began after Dr. Jones sought the resolution of financial difficulties of the corporation. Testimony at trial demonstrated that Drs. Alleyne and Baines were requested to pay pro rata shares of corporate expenses and to sign a lease which would increase the monthly rental rate. Alleyne and Baines refused to sign the lease and vacated the premises during July of 1988. However, Alleyne and Baines maintain that they were evicted from the premises by Dr. Jones after a new board of directors was elected and they refused to pay increased rent. Drs. Alleyne and Baines testified that they did not receive notice of corporate meetings. In contrast, Dr. Jones and new board members testified that Alleyne and Baines were not evicted and were notified of regular and special meetings of the Board but refused to attend. Despite conflicting testimony regarding notice, Drs. Alleyne and Baines did not attend corporate meetings nor did they contribute financially to corporate expenses after April of 1988.

Due to mounting financial obligations, Dr. Jones was forced to refinance the Deposit Guaranty loans. On March 20, 1988, a new Board of Directors was elected which included James C. Bradford, George A. Jones, and Clintoria I. Jones. At this meeting, Dr. Jones was elected President. In 1992, at the law offices of Phelps Dunbar, the directors signed a resolution to allow Dr. Jones to mortgage the corporate property. This resolution was effective as of August 26, 1988. Board member James Bradford testified that this resolution was to clarify the minutes of the July 13, 1988 board meeting where Dr. Jones was given the authority to seek refinancing and mortgage corporate property. Minutes of the July 13, 1988 meeting reflect the authorization of Dr. Jones to refinance existing debt obligations.

Dr. Jones secured financing from Trustmark National Bank (hereinafter "Trustmark") which resulted in a lower monthly payment. By virtue of the refinancing arrangement, the loans extended by Deposit Guaranty were satisfied and the deeds of trust on the personal residences of Drs. Alleyne and Baines were cancelled. Dr. Jones continued making payments, but was eventually unable to do so and defaulted on July 18, 1991. Trustmark then instituted foreclosure proceedings. As of the date of trial,

the amount owed on the loan was as follows: principal amount ($189,415.98) interest ($23,347.47) for a total of $212,763.45 with a per diem of $64.85.

On January 31, 1992, Drs. Alleyne and Baines brought suit against Dr. Jones, Trustmark National Bank, Ken Adcock, as Trustee for Trustmark, James C. Bradford, George Jones, III, Clintoria Jones and JABB Systems, Inc., P.A. Alleyne and Baines alleged that Dr. Jones unlawfully executed a deed of trust in favor of Trustmark. Alleyne and Baines specifically alleged fraud, breach of fiduciary duties, the unlawful placement of a cloud on the title of corporate property, and sought the cancellation of the deed of trust executed by Jones in favor of Trustmark as well as an injunction preventing Trustmark from foreclosure.

Dr. Jones counterclaimed alleging unjust enrichment, breach of fiduciary duties, and interference with the business relationship between himself and Trustmark. Dr. Jones also sought contribution for corporate expenses, punitive damages and attorneys' fees.

With leave of court, Trustmark filed a cross-claim against Dr. Jones seeking judgment in the amount of the outstanding principal and interest owed on the promissory note as well as attorneys' fees. Trustmark requested indemnity against Dr. Jones for any amounts recovered by plaintiffs against Trustmark and sought reformation of the deed of trust executed by Dr. Jones.

Chancellor Dilliard recused himself and William Charles Bell was appointed as Special Chancellor. Following trial, Judge Bell found that the plaintiffs were entirely unsuccessful in the claims asserted against the defendants. Judge Bell, however, found in favor of Dr. Jones on his claim of unjust enrichment and therefore ordered pro rata contribution by Drs. Alleyne and Baines for the amount of corporate expenses paid by Dr. Jones. Judge Bell found in favor of Trustmark in the amount of $216, 862 on the debt owed by Dr. Jones on behalf of JABB and ordered contribution by Drs. Alleyne and Baines.

The trial court further found that the action brought by Drs. Alleyne and Baines was frivolous and unnecessary. As a result, Judge Bell awarded attorneys fees in the nature of punitive damages in the amount of $60,000.00 in favor of Dr. Jones.

Aggrieved, Drs. Alleyne and Baines appeal to this Court, citing the following issues:

> **I. WHETHER THE CHANCELLOR ERRED IN GRANTING JUDGMENT IN FAVOR OF DR. THEODORE JONES ON THE CLAIM OF UNJUST ENRICHMENT.**
>
> **II. WHETHER THE CHANCELLOR ERRED IN GRANTING JUDGMENT IN FAVOR OF DR. JONES AND ORDERING DRS. ALLEYNE AND BAINES TO CONTRIBUTE TO THE DEBT OWED TO TRUSTMARK.**
>
> **III. WHETHER THE CHANCELLOR ERRED IN ASSESSING PUNITIVE DAMAGES AGAINST DRS. ALLEYNE AND BAINES.**

**DISCUSSION OF LAW**

**STANDARD OF REVIEW**

Where, as here, a trial court sits without a jury and makes findings of fact, these ordinarily are safe on appeal where the record includes substantial supporting evidence. This is true whether the findings relate to matters of evidentiary fact or ultimate fact. This Court on review examines the entire record and must accept:

that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom. . . .

Ordinarily, this Court must affirm a finding of fact unless upon review of the record we [are] left with the firm and definite view that a mistake has been made.

*Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76, 82 (Miss. 1992) (internal citations omitted). Our standard of review regarding issues of law is *de novo*. *Id.* at 83.

### I. WHETHER THE CHANCELLOR ERRED IN GRANTING JUDGMENT IN FAVOR OF DR. JONES ON THE CLAIM OF UNJUST ENRICHMENT.

Drs. Alleyne and Baines first argue that the Special Chancellor erred in granting judgment in favor of Dr. Jones on the counterclaim of unjust enrichment. Specifically, Alleyne and Baines argue that the Chancellor failed to recognize that corporations are separate legal entities and that stockholders are not liable for the acts of the corporation.

Appellants rely on *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044 (Miss. 1989), *T.C.L., Inc. v. Lacoste*, 431 So. 2d 918 (Miss. 1983), overruled on other grounds by *C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss. 1992) and the doctrine of corporate separateness. In *T.C.L.*, purchasers of cemetery plots brought action against the corporate owner of the cemetery. The jury returned a verdict holding two officers and stockholders of the corporation personally liable for contracts entered into with consumers. This Court held that "[a] corporation is an entity separate and distinct from its stockholders." *Id.* at 922 (*citing Illinois Cent. R. Co. v. Cotton Seed Co.*, 166 Miss. 579, 148 So. 371 (1933)). "Generally, a stock-holder is not liable for the acts of the corporation." *Id.* (*citing Grapeco Bottling Co. v. Ennis*, 140 Miss. 502, 106 So. 97 (1925)).

In *Gray*, a corporation which rented commercial property brought action against its landlord for conversion following the termination of a lease. The landlord counterclaimed against the corporation and sought to hold the shareholders of the corporation liable as well. On appeal, the landlord challenged the lower court's discharge of the shareholders. There, this Court discussed the limited liability of corporate shareholders:

As do most courts, this Court has reserved piercing the corporate veil for factual circumstances which are clearly extraordinary--where to do otherwise would "subvert the ends of justice." *Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance*, 321 So. 2d 281, 284 (Miss. 1975). Among this Court's reports may be found a long string of decisions reflecting our law's commitment to the legal integrity of the corporate entity--and the concomitant limited liability of shareholders. (citations omitted).

*Gray*, 541 So. 2d at 1046. This Court concluded that to cause a court to disregard the corporate entity and justify shareholder liability:

the complaining party must demonstrate: (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.

*Id.* at 1047 (citations omitted).

In response, Dr. Jones distinguishes *Gray* and *T.C.L.* from the case *sub judice* on the basis that each case involved shareholders seeking to interpose the corporate shield against claims by persons outside the corporation rather than intra-corporate disputes. Jones relies on *Gibson v. Manuel*, 534 So. 2d 199 (Miss. 1988), where a corporate officer was held individually liable to a pledgee of corporate stock for violation of his fiduciary responsibilities.

This Court has consistently held that corporate officers and directors owe certain duties to the corporation and to its shareholders. In *Derouen v. Murray*, 604 So. 2d 1086, 1092 (Miss. 1992), this Court stated:

> Officers and directors have well defined duties owed to the corporation they serve and, equitably, to its shareholders. In the first place, an officer or director owes the corporation a duty of care, a duty to perform the officer's or director's functions in good faith, in a manner that he or she reasonably believe to be in the best interest of the corporation, and with the care that an ordinarily prudent person would reasonably be expected to exercise in a like position and under similar circumstances.

Corporate officers and directors are also subject to the duty of loyalty, which "arises in that the officer or director stands in a fiduciary relationship to his corporation and shareholders. It imports proscriptions on conflicts of interest. We have called this the duty of loyalty and good faith in discharge of corporate office." *Id.* (citations omitted).

The rules, however, differ when the corporation is closely-held. In *Fought v. Morris*, 543 So. 2d 167 (Miss. 1989), as in the case *sub judice*, this Court was faced with dissension among shareholders in a close corporation. Close corporations are business entities with "few shareholders, the shares of which are not publicly traded." *Id.* at 169.

In close corporations, "[m]anagement typically operates in an informal manner, more akin to a partnership than a corporation. The traditional view that shareholders have no fiduciary duty to each other, and transactions constituting 'freeze outs' or 'squeeze outs' generally cannot be attacked as a breach of duty of loyalty or good faith to each other, is outmoded." *Id.* (*citing* O'Neal, Close Corporations, 8.08 (1987)).

However, this Court has held that although liability of corporate directors to creditors of a corporation must be based on "individual wrongdoing", "[d]irectors may be liable to stockholders for mismanagement of the business of the corporation or waste of its assets." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) (*quoting* *Wilson v. Stevens*, 129 Ala. 630, 29 So. 678, 679 (1901)). Here, however, the judgment against Alleyne and Baines was not premised on the breach of a corporate duty. The Chancellor specifically held that the evidence adduced at trial was insufficient to demonstrate a breach of fiduciary duties by Drs. Alleyne and Baines and awarded judgment in favor

of Dr. Jones on the equitable theory of unjust enrichment. In *Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76 (Miss. 1992), this Court summarized the principles of unjust enrichment as follows:

> A person is enriched when he receives an economic benefit. This includes positive profits, a loss avoided, as well as discharge of debts. What is important and what careless readers often fail to remember is our law accepts no value condemning pursuit of wealth, so long as it be done within legal parameters. There is nothing inherently unjust about enrichment. The principle does not proscribe mere enrichments, only those objectively seen as unjust.

> * * *

> The Restatement of Restitution, which has been cited with approval by this Court, provides, if payment is made, even by mistake, to a creditor of a third person to satisfy a just debt of that third person, the payor has no right of restitution of or from the third party. To be sure, this is not so if the third person has procured the mistake or participated in or caused a breach of some duty imposed in law, but where nothing like this has happened, the enrichment is not unjust and the payor must instead look to the party whose debt has been paid, through subrogation or some such theory.

*Id.* at 92 (citations omitted).

Alleyne and Baines now challenge the sufficiency of the proof adduced at trial to support the Chancellor's conclusion that they were unjustly enriched. Rather, Alleyne and Baines contend that the corporation was the only party that was enriched. Alternatively, Alleyne and Baines argue that if there was unjust enrichment, it was only the increased value of the stock and therefore the appropriate remedy was to impose a constructive trust.

In *Omnibank*, this Court clearly recognized that enrichment includes both "positive profits, a loss avoided, as well as *discharge of debts.*" *Id.* The Chancellor specifically found that Drs. Alleyne and Baines received notice of meetings of the board of directors, and simply chose not to attend those meetings and to withdraw from the corporation. After Alleyne and Baines vacated the premises in July, 1988, Dr. Jones continued paying corporate debts despite the fact that Alleyne and Baines brought suit on August 4, 1988 to establish their rights to ownership in JABB. Clearly, the discharge of debt owed is enrichment. The judgment of the Chancellor does not appear to have been error. This issue is without merit.

### II. WHETHER THE CHANCELLOR ERRED IN GRANTING JUDGMENT IN FAVOR OF DR. JONES AND ORDERING DRS. ALLEYNE AND BAINES TO CONTRIBUTE TO THE DEBT OWED TO TRUSTMARK.

In the case *sub judice*, Trustmark filed a cross-claim against Dr. Jones for collection of the outstanding balance of the note. The Chancellor granted judgment against Dr. Jones for the amount of the debt, interest and attorney's fees in the amount of $216,862.15 and allowed the bank to foreclose on the real estate to satisfy that judgment. The Chancellor further held that Dr. Jones was entitled to contribution from Drs. Alleyne and Baines for the amount owed on the Trustmark judgment.

Drs. Alleyne and Baines now argue that they were not liable to Dr. Jones under the theory of contribution due the "lack of a commonality of liability" between the parties. Alleyne and Baines argue that the only joint obligation/common liability was the corporate debt to Deposit Guaranty which was extinguished when Dr. Jones refinanced the obligation with Trustmark on August 26, 1988.

In *Williams v. Owen*, 613 So. 2d 829, 835 (Miss. 1993), this Court summarized the principles of contribution as follows:

> Contribution is purely an equitable remedy. *Nichols v. Anderson*, 837 F.2d 1372, 1377 (5th Cir. 1988). Its aim is the prevention of injustice, pure and simple. *DeFoe v. Great Southern National Bank,* 511 So. 2d 912, 914 (Miss. 1987).

> In the past, we have not hesitated to require contribution where one of two parties has inequitably shouldered the burden for a common liability. *See Celotex Corp. v. Campbell Roofing & Metal Works, Inc.*, 352 So. 2d 1316, 1318 (Miss. 1977); *Comfort Engineering Company, Inc. v. Kinsey*, 523 So. 2d 1019, 1021-22 (Miss. 1988); *see also Nichols v. Anderson*, 837 F.2d 1372, 1377 (5th Cir. 1988).

In *Williams*, this Court held that "[t]here is also a rebuttable presumption that all co-makers of a note are liable for an equal share of a debt, even though each is liable for the full amount under joint and several liability." *Id.* at 835 (*citing* White and Summers, Uniform Commercial Code § 13-6 (3d ed. 1988)). Continuing, this Court held that "[t]he right of contribution among co-makers of a note is the same as that which exists among partners. 'When one co-maker pays the instrument he is entitled to contribution from other co-makers.' The right of contribution among co-makers is equitable in nature and rests upon an implied contract of reimbursement among co-makers and not upon the instrument which was discharged." *Id.* (citation omitted).

The evidence adduced at trial demonstrated that Drs. Alleyne, Baines and Jones formed a corporation for the purpose of providing dental services and later purchased real property from which to operate their dental offices. The purchase and remodeling were financed by JABB through Deposit Guaranty. A construction loan was made to JABB and secured by the land. Deposit Guaranty made a permanent loan with monthly installments to JABB secured by the building and land and guaranteed by the SBA. The SBA accepted deeds of trust on the property; personal guaranties by Drs. Alleyne and Baines secured by second deeds of trust on their personal residences; a deed of trust on the personal residence of Dr. Jones; and a deed of trust on commercial property of Dr. Jones to secure the guaranty. Deposit Guaranty also made an equipment loan to JABB, Inc. for the purchase of dental equipment which was secured by a security interest in the dental equipment.

Following a dispute, Alleyne and Baines ceased contributing to the payment of corporate expenses. Dr. Jones was soon forced to refinance the loans through Trustmark. The Trustmark loan was personally guaranteed by Dr. Jones, as President of JABB, and secured by a deed of trust on the real estate. Dr. Jones was later unable to continue making payments, and Trustmark began foreclosure proceedings.

Drs. Jones, Alleyne and Baines were clearly liable on the loans extended by Deposit Guaranty. However, due the abandonment of the corporation by Alleyne and Baines, Dr. Jones was forced to

secure refinancing in order to continue paying the corporate debt of JABB. By virtue of the refinancing arrangement with Trustmark, Dr. Jones relieved Alleyne and Baines from their debt obligations to Deposit Guaranty. The judgment against Dr. Jones in favor of Trustmark was considered by the Chancellor to be an additional corporate expense for which Dr. Jones was entitled to contribution.

In *Celotex Corp. v. Campbell Roofing and Metal Works, Inc.*, 352 So. 2d 1316, 1318 (Miss. 1977), this Court held that "one who is compelled to satisfy, or pay more than his just share of [a] common burden or obligation, is entitled to contribution from the others to obtain from them payment of their respective shares." As noted by this Court in *Williams*, *supra*, "we have not hesitated to require contribution where one of two parties has inequitably shouldered the burden for a common liability." *Williams*, 613 So. 2d at 835. Dr. Jones was clearly required to shoulder more than his just share of a common burden or obligation. Moreover, Alleyne and Baines continued to refuse to contribute to corporate expenses despite the fact that they had brought a lawsuit to determine and secure their ownership rights in JABB. The equitable remedy ordered by the Chancellor was not error. This issue is without merit.

Alleyne and Baines also argue that any right to contribution is barred by the statute of limitations and the doctrine of collateral estoppel. Alleyne and Baines first argue that any right to contribution for corporate debt should have been brought during prior litigation which commenced on August 4, 1988. Because contribution was not sought in the prior litigation, Drs. Alleyne and Baines argue that it is now barred by the doctrine of collateral estoppel. Appellants, however, cite absolutely no authority in support of this argument. As a result, this Court is not compelled to address this assignment of error. *Matter of Guardianship of Snodgrass*, 692 So. 2d 85, 87 (Miss. 1997) (*citing Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994); *Matter of Estate of Mason v. Fort*, 616 So. 2d 322, 327 (Miss. 1993)).

Moreover, a review of the record below reveals that the prior litigation was not brought by Dr. Jones against Drs. Alleyne and Baines, but rather by Alleyne and Baines against Dr. Jones. Prior litigation between the parties in the case *sub judice* is that styled as *Clement Alleyne and Gene Baines vs. Theodore Jones, Individually, and JABB Systems, Inc., P.A., A Mississippi Corporation* which was filed on August 4, 1988 and resolved by agreed order on July 9, 1990. In this litigation, Alleyne and Baines sought the reformation of stock certificates of the corporation and a full and complete accounting of corporate assets. In his answer, Dr. Jones alleged that Drs. Alleyne and Baines were not entitled to additional shares of stock and were not denied access to corporate records. Dr. Jones requested judgment against Drs. Alleyne and Baines for rent due at the former offices located on Nakoma Drive in Jackson, Mississippi and for rent due under an oral lease obligation regarding the Hanging Moss offices for the months of April-July, 1988. Dr. Jones also asserted a counterclaim alleging conversion of personal property which had been pledged as security for corporate debt.

Prior to trial, the parties reached an acceptable settlement and an Agreed Order was entered by Chancellor Dillard which reflects that the parties agreed that Dr. Jones owned 50% of the stock and Drs. Alleyne and Baines each owned 25% of the stock of JABB. The order directed that the stock certificates evidencing shares of the corporation were to be cancelled and replacement certificates issued. All parties agreed that Dr. Baines was to continue as Secretary/Treasurer of JABB.

The present action was filed by Drs. Alleyne and Baines on January 31, 1992 alleging that Dr. Jones fraudulently executed a deed of trust on corporate property in order to secure the refinancing arrangement with Trustmark. By virtue of the subsequent default and the judgment in favor of Trustmark, the Chancellor ordered contribution by Drs. Alleyne and Baines.

The defense of collateral estoppel and were most recently discussed in *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So. 2d 742, 748 (Miss. 1996). There, this Court noted that collateral estoppel "precludes parties from relitigating the exact issue in a different and subsequent cause of action." *City of Jackson*, 688 So. 2d at 748 n.1 (*quoting Dunaway v. W.H. Hopper and Associates, Inc*., 422 So. 2d 749, 751(Miss. 1982)). The refinancing arrangement with Trustmark took place on August 26, 1988, less than one month after the beginning of the prior litigation. Dr. Jones, however, did assert claims for unjust enrichment in the 1988 litigation but only asserted claims for the amount of past due rent at each office location. Therefore, the issue of contribution for the amount of the corporate debt owed on the real estate was not litigated during the 1988 litigation and therefore is not barred by the doctrine of collateral estoppel.

Drs. Alleyne and Baines also argue that the three-year statute of limitations contained in Miss. Code Ann. § 15-1-49 controls the Chancellor's order of contribution. Appellants argue that "since this lawsuit was filed on January 31, 1992 any right to contribution would be barred by the three year statute of limitations. . . ."

In response, Dr. Jones argues that this statute of limitations is not applicable because the "Special Chancellor ordered contribution to the Trustmark judgment -- not the note itself." Although the Trustmark note was executed on August 26, 1988, Dr. Jones argues that the judgment in favor of Trustmark and the resulting order that Drs. Alleyne and Baines contribute to Dr. Jones' payment of this judgment were not entered until April 17, 1993 and are therefore not barred by the statute of limitations.

Testimony at trial showed that Dr. Jones defaulted on the Trustmark loan on July 19, 1991. On January 31, 1992, Drs. Alleyne and Baines brought suit challenging, *inter alia*, the validity of the refinancing arrangement with Trustmark. Trustmark asserted a cross-claim against Dr. Jones and prevailed. In the judgment, the Chancellor specifically found that the *judgment* in favor of Trustmark would constitute another corporate contribution by Dr. Jones and therefore ordered payment by Drs. Alleyne and Baines. Therefore, the judgment in favor of Trustmark entered on April 17, 1993, controls the relevant time period for the purposes of the statute of limitations and the contribution of Drs. Alleyne and Baines to that judgment.

### III. WHETHER THE CHANCELLOR ERRED IN ASSESSING PUNITIVE DAMAGES AGAINST DRS. ALLEYNE AND BAINES.

Drs. Alleyne and Baines next argue that the Chancellor erred in awarding punitive damages to Dr. Jones. Specifically, Alleyne and Baines argue that the award of punitive damages was in conflict with the Chancellor's findings that "plaintiffs were privileged to take action or attempt to assert their rights as they perceived them with regard to the Trustmark loan, and the cause of action for interference with business relation is dismissed with prejudice." The Chancellor later found that "this lawsuit is wholly unnecessary and harassment, and an assessment of attorneys' fees as punitive damage against Drs. Baines and Alleyne would be appropriate." The Chancellor then awarded Dr. Jones attorneys'

fees "in the nature of punitive damages" in the amount of $60,000.00.

In *Aqua-Culture Technologies, Ltd. v. Holly*, 677 So. 2d 171 (Miss. 1996), this Court espoused the following guidelines within which we adjudge the award of punitive damages:

> [N]o litigant is entitled to punitive damages as of right. The question is always one for the finder of fact to determine based upon the circumstances of the case whether, in its view, the offender should be subjected to punishment in order to deter the offensive conduct. *Harvey-Latham Real Estate v. Underwriters at Lloyd's, London*, 574 So. 2d 13, 17 (Miss. 1990). The fact finder is never under a duty to award punitive damages. *Allen v. Ritter*, 235 So. 2d 253 (Miss. 1970). "The awarding of punitive damages, when allowable, is discretionary with the jury or with the judge trying cases without a jury." *Ellis v. S. Pellegrini, Inc.*, 163 Miss. 385, 386, 141 So. 273, 274 (Miss. 1932).

> Thus, the question of whether punitive damages should be awarded depends largely upon the particular circumstances of the case. A trial judge may validly find that, although the conduct of a defendant in a given case is such that the awarding of punitive damages would be appropriate, the actual awarding of additional monetary damages above the compensatory damages would serve no purpose or otherwise be inappropriate. Nevertheless, the trial judge may also validly find that the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore determine that attorney fees should be awarded. A trial judge should be granted the flexibility to find that, although the actual awarding of punitive damages is inappropriate, the conduct of the defendant is so extreme and outrageous that he, rather than the plaintiff, should bear the expense of litigation.

*Id.* at 184-85.

The record clearly reveals that the award of punitive damages stemmed from the findings and conclusions of the Chancellor that the litigation in the case *sub judice* was frivolous and unnecessary. The Chancellor specifically found:

> I find that this was a frivolous lawsuit, that the defendants Baines and Alleyne refused to take responsibility for the corporation as directors and stockholders, and refused to take responsibility for the corporate debts, but that they took the benefit of Dr. Jones assuming all those responsibilities, and after Dr. Jones assumed those responsibilities, then they made every effort to gain all the benefit of the corporation without accepting any responsibility, and attempted to obtain the property debt free, essentially debt free, and then on top of that sued Dr. Jones for his trouble. Now, I don't imply that initially one party was any more at fault than another, and maybe these differences could have been worked out early on, but as far as this lawsuit is concerned, I find it was a frivolous lawsuit and has imposed [an] enormous burden on Dr. Jones.

The evidence at trial showed that Drs. Alleyne and Baines abandoned JABB, a corporation in which they occupied positions as directors and stockholders. Moreover, Alleyne and Baines secured their positions and ownership rights in JABB in the 1988 litigation. However, after doing so, Alleyne and Baines refused to make payments toward the debt owed to Deposit Guaranty or the expenses of the corporation. As a result, Dr. Jones was left with severe financial difficulties and the sole responsibility

of maintaining the corporation. After the abandonment of JABB and the refusal to pay the corporate debt, Alleyne and Baines brought action against Dr. Jones seeking to extinguish the mortgage held by Trustmark.

Following a close review of the record below and in light of the principles set forth in *Aqua-Culture*, *supra*, the award of attorneys' fees/punitive damages was not erroneous. Therefore, this issue is without merit.

## IV. WHETHER TRUSTMARK AND KEN ADCOCK SHOULD BE DISMISSED FROM THIS APPEAL

Trustmark and Ken Adcock, as Trustee, request dismissal from this appeal. On September 4, 1996, Trustmark National Bank and Ken R. Adcock filed their Joinder in Brief Filed By Appellees and Motion to Dismiss. Trustmark and Adcock sought dismissal from the instant appeal because "no assignment of error submitted by the Appellants to this Court mentioned or addressed the judgment rendered in favor of Ken R. Adcock and Trustmark National Bank. . . . " On September 13, 1996, this Court ordered that the appellee's motion "be and hereby is passed for consideration together with the merits of the case."

In their brief, Appellees again request dismissal. Appellees correctly argue that "[n]o issue has been raised with the validity of the judgment awarded to Trustmark." The issues raised in this appeal challenge only the Chancellor's determination that Drs. Alleyne and Baines were unjustly enriched by Dr. Jones' continued payment of corporate expenses; the order requiring Alleyne and Baines to contribute to the judgment in favor of Trustmark and against Dr. Jones; and the award of punitive damages against Drs. Alleyne and Baines. For these reasons, we grant Trustmark and Adcock's motion to be dismissed from this appeal.

## V. WHETHER APPELLATE SANCTIONS SHOULD BE ASSESSED.

Appellees request that this Court impose sanctions for the filing of a frivolous appeal. Appellees argue that the assignments of error raised by Drs. Alleyne and Baines are "utterly without merit" and "amount to continued harassment of the Appellees."

This Court may impose appellate sanctions pursuant to Miss.R.App.P. 38 which provides:

> In a civil case to which Miss. Code Ann. § 11-3-23 (1991) does not apply, if the Supreme Court or Court of Appeals shall determine that an appeal is frivolous, it shall award just damages and single or double costs to the appellee.

Appellees rely on *Ivy v. Merchant*, 666 So. 2d 445, 450 (Miss. 1995) wherein this Court held that Rule 38 frivolity is evaluated by reference to Miss.R.Civ.P. 11. *Id.* This Court further held:

> "[A] pleading or motion is frivolous within the meaning of Rule 11 only when objectively speaking, the pleader or movant has no hope of success." *Tricon Metals & Services, Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989). The Court held further that its inquiry into whether a party had any hope of success is an objective one "to be exercised from the vantage point of a reasonable party in (litigant's) position as it filed and pursued its claim." *Id.* at 1335.

*Ivy*, 666 So.2d at 451.

The appellants, when filing and pursuing their appeal, would not have necessarily concluded that they had "no hope of success" nor were the issues raised completely baseless either in law or fact. Although the Chancellor found that the suit below was frivolous and tantamount to harassment, we cannot conclude that the appeal of the Chancellor's decision warrants appellate sanctions.

Appellees also request that sanctions be imposed upon the attorneys for the appellants pursuant to Miss.R.App.P. 46(d). Miss.R.App.P 46(d) allows sanctions if this Court determines that the attorney filed "any frivolous petition, motion, brief, or other paper." Again, it is not clear that the appellate issues raised by the appellants were frivolous and therefore sanctions against the appellants and/or their attorneys are inappropriate.

## CONCLUSION

The evidence adduced at trial revealed that Drs. Alleyne and Baines abandoned JABB Systems, Inc. and thereafter refused to contribute to corporate expenses. The remaining shareholder, Dr. Jones, continued to make financial contributions to the corporation and maintained its existence. A review of the record below does not reveal that the findings and conclusions of the Chancellor were erroneous or were not supported by substantial evidence, and therefore, we affirm the Chancellor's decision.

**JUDGMENT AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. BANKS, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

The chancellor in this case erred by forcing Alleyne and Baines to unjustly enrich Jones on a theory of contribution. Alleyne and Baines basically are being forced to pay for a corporate obligation for which they were not individually responsible. Further, the chancellor erred in imposing punitive damages based on the filing of the lawsuit, as opposed to some unconscionable conduct. The proper punishment for filing of frivolous pleadings is through sanctions under Rule 11. Therefore, I respectfully dissent.

JABB Systems, Inc., organized in 1984 for the purpose of providing dental services, originally had four shareholders--Jones, Alleyne, Baines, and Boykins. Each shareholder owned a 25 percent interest in the corporation and its assets. Boykins withdrew from the corporation, leaving Jones,

Alleyne, and Baines as directors and shareholders of JABB. When Alleyne and Baines refused to agree to a rent increase in 1988, Jones sent a letter of eviction, with which Alleyne and Baines complied. Immediately afterward, a new board of directors was elected. Rather than have the new directors replace Alleyne and Baines, or dissolve the corporation, occupy all of the space and refinance the loan in his own name, Jones chose to leave the property in the corporation's name and to refinance the mortgage with Trustmark National Bank. This decision, in effect, canceled any guarantee or liability on the part of Alleyne and Baines for the corporation's debt.

Shareholders Alleyne and Baines cannot be held liable to Jones based on liabilities incurred by Jones. The only joint obligation held by Alleyne, Baines, and Jones was the debt to Deposit Guaranty National Bank for the real estate being used as dental offices. This obligation was subsequently extinguished when Jones chose to refinance the debt on his own. Once the debt was refinanced, Jones paid the corporate expenses, including insurance, and enjoyed the benefit of having office space. In the meantime, Alleyne and Baines obtained other space and incurred their own expenses as dentists. Alleyne and Baines never signed any of the documents regarding the refinancing with Trustmark. Neither Alleyne nor Baines was a co-maker of the refinanced debt, and neither of them guaranteed the debt. At best, the liability is a corporate debt, and not one for the individual shareholders who had nothing to do with the debt. It follows that neither Alleyne nor Baines should be liable to Jones for contribution.

Additionally, the chancellor's ruling to grant punitive damages against Alleyne and Baines was erroneous. Punitive damages are awarded based on conduct, such as a bad faith refusal to pay on a contract. Assessment of attorneys' fees is inappropriate as a form of punitive damages. If the majority is attempting to punish the appellants for the filing of a frivolous lawsuit, it must do so under an analysis of sanctions under M.R.C.P. 11(b), specifically finding that as an objective matter, Alleyne and Baines had no hope of success when they filed suit. *See **Tricon Metals & Serv. Inc. v. Topp***, 537 So. 2d 1331, 1335 (Miss. 1989). Given this standard, there is no basis for the award of punitive damages to Jones. Interestingly enough, the chancellor noted that the "plaintiffs were privileged to take action or attempt to assert their rights as they perceived them with regard to the Trustmark National Bank loan." There is no basis for an award of punitive damages, or attorneys' fees for that matter, where plaintiffs merely assert a claim, especially when the chancellor specifically recognizes that the plaintiffs were entitled to make a claim.

It is for these reasons that I dissent. I would reverse and render, finding that the chancellor erred on the imposition of punitive damages and assessment of shareholder liability in this case.

**LEE, C.J., JOINS THIS OPINION.**

1. Dr. Boykins withdrew from the corporation soon thereafter leaving the remaining three dentists as directors/shareholders of JABB, Inc.